## DAVIS v. DAVIS.

Code Civ. Proc. § 486, provides that in an action by or against a personal representative, heir at law, or next of kin neither party shall testify against the other as to any transaction with decedent. On an issue of delivery of a deed to a decedent, grantor was allowed to testify, over objection, that, after executing the deed he had it recorded, it had been returned to him by the register of deeds, and had ever since been in his own possession, and that he had executed it, so .that, if he should die, decedent would be comfortable for life. **Held,** that the evidence of. grantor related to, a transaction with decedent and should have been excluded, especially where decedent and grantor, who were brothers, lived in the same family, and. decedent resided in grantor's family at his death.

Pol. Code, §§ 866-873, inclusive, not requiring the register of deeds to keep a record of the person to whom a deed is returned when recorded, a registry fee book kept by another register of deeds was inadmissible for that purpose.

A fact established by a prior judgment in an action between the same parties, and involving the same question at issue in a subsequent action, is competent as evidence in such subsequent action, and ordinarily constitutes an estoppel of further inquiry.

The abstracts of the parties being in conflict, the Supreme Court is required to examine the original bill of exceptions.

The record of an action in another state purported to be a certified copy of the petition, answer, replication, and "journal entry." Attached to the petition was a certificate signed by the clerk of the court stating that he was such clerk, having possession of the records of his office, and that such petition was a true copy of the petition on file. To this was added a certificate that a person named was the judge of the district. Following this was a certificate purporting to be made by the judge, but not signed by him. Practically the same certificates were made by the clerk on the answer, reply, and Journal entry. To the journal entry was added a certificate signed by the judge that he was the judge of the district and that such other person, was the clerk, and that the signature to the certificate of the clerk was the signature of such person and entitled to full faith and credit. Held, that the certificate signed by the judge was not limited to the certificate of the clerk to the journal entry, but applied to the prior certificates of the clerk upon the petition, answer and reply.

The omission of the words "that the attestation is in due form," required by Code Civ. Proc. § 529, from the certificate of the judge to the record of a foreign judgment, was supplied by the statement that the certificate of the clerk was "entitled to full faith and credit," and the record was not thereby rendered inadmissible.

The record of a foreign judgment showed, following the pleadings, what was denominated a "journal entry," the recitals of which were that the cause came on for hearing, evidence introduced, and arguments made, whereupon the court took the same under advisement and rendered judgment, following which were certain facts found and the adjudication of the court. On the back of the journal entry were the filing indorsements of the clerk and place of record. Held, that, while the findings and judgment were not as formal as they are required to be in South Dakota, yet they were sufficiently formal to be valid.

The presumption that a person shown to be insane continued so is rebuttable.

(Opinion filed, Jan. 12, 1910.)

Appeal from Circuit Court, Clark County. Hon. GEORGE H. MARQUIS, Judge.

Action by John B. Davis against Michael B. Davis. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Reversed.

*C. G. Sherwood,* for appellant. *S. A. Keenan, J. C. Watson,* and *W. J. Jacobs,* for respondent.

CORSON, J. This is an action instituted by the plaintiff as the son and only heir at law of Andrew J. Davis, deceased, to cancel a certain deed for a quarter section of land in Clark county, executed by said Andrew J. to the defendant, who was a brother of the deceased, bearing date the 1st of September, A. D. 1903, on the ground that the said Andrew J. was at the time of execution a lunatic, and mentally incapaciated to transact any business by reason of such insanity. The case was tried to the court without a jury, and, the findings and judgment being in favor of the defendant, the plaintiff has appealed.

It is disclosed by the record that on December 30, 1893, the defendant became the owner of the said quarter section of land, and that he, with his wife, Sarah A. Davis, executed to Andrew J. Davis a warranty deed for said premises dated February 6, 1894, and filed for record February 9, 1894. It was stipulated on the trial as follows: "It is stipulated between the parties that prior to the execution of the warranty deed from Michael B. Davis and wife to Andrew J. Davis that said Michael B. Davis was the owner in fee of the tract of land involved in this case. The defendant does not by this stipulation admit that title was conveyed to Andrew J. Davis by said deed."

The findings of the court are as follows:

"First. That plaintiff is the son and sole surviving heir of Andrew J. Davis, deceased.

"Second. That on or about March 4, 1904, in Nebraska City, Neb., Andrew J. Davis departed this life.

"Third. That on or about February 6, 1894, defendant and his wife executed, in due form, a warranty deed purporting to convey to Andrew J. Davis the following described real estate situated and being in Clark county, S. D., and described as follows, to wit: South east quarter (S. E.¼) of section seventeen (sec. 17), in township one hundred sixteen (twp. 116) north, of range fifty-nine (R. 59) west, of the Fifth principal meridian, containing 160 acres. And on February 9, 1894, said deed was

by defendant filed for record in the office of register of deeds of Clark county, and was duly recorded therin, and then by said register of deeds returned by mail to defendant.

"Fourth. That defendant never parted with the possession of said deed, except to have it recorded as aforesaid. That he has never delivered said deed to any person.

"Fifth. That plaintiff's entire claim of title to and for possession of said land is based upon said deed.

"Sixth. The court finds that on or about September 3, 1903, Andrew J. Davis, since deceased, was not insane or of unsound mind. That on or about said date he was competent and fully qualified to comprehend and understand a transaction involving the execution and delivery of a quitclaim deed of said land to defendant.

"Seventh. That plaintiff is guilty of laches in bringing this action.

"Eighth. That defendant now is, and since on or about December 30, 1893, has been, the owner in fee of said tract of land."

From its findings the court concludes as follows:

"First. The court concludes that defendant is the owner in fee of said tract of land, therein described, and is entitled to the complete possession thereof.

"Second. That plaintiff has no title, nor interest in said land, nor any part thereof.

"Third. That defendant is entitled to judgment for the dis-- missal of plaintiff's case, and for judgment quieting title thereto in defendant, and for his costs."

It will be observed from the findings of the court that the deed executed by the defendant to Andrew J. bearing date of February 6, 1894, though filed for record in the office of the register of deeds of Clark county by the defendant and duly recorded, was never in fact delivered by the defendant to said Andrew J., and that plaintiff's entire claim of title to and for possession of said land is based upon said deed, and that the court further finds that in September, 1903, at the time Andrew J. executed the deed for the said premises to the defendant, he was not insane or of unsound mind.

It is contended by the appellant: (1) That the court erred in its findings of fact to the effect that the deed from the defendant to Andrew J. in 1894 was never in fact delivered. (2) That the court erred in finding that at the time Andrew J. executed his deed to said premises to the defendant he was not insane. (3) That the court erred in excluding the evidence of what is claimed to be an adjudication of the district court of Jewell county, in the state of Kansas, in which John B. Davis, the plaintiff herein, was plaintiff, and M. B. Davis, the defendant herein, was defendant, filed in the office of that court on or about May 17, 1904, adjudging the said Andrew J. Davis to have been insane at the time he executed a certain deed for a quarter section of land in Kansas, which deed bears date of August 8, 1902, and canceling the same, except so far as it should be held security as a mortgage for $1,000 loaned by the said Michael B. Davis to the said Andrew J. Davis. Numerous other errors are assigned as to the admission and rejection of evidence, and those we deem material will be discussed further on in this opinion.

It is insisted by the defendant in support of the court's findings and its conclusions of law that the deed purporting to have been executed by the defendant and wife to Andrew J. in 1894 was never delivered to the said Andrew J,, and therefore never took effect as a deed. It is further insisted by the defendant that, if that deed is to be considered as delivered and effective as a deed, then the deed from Andrew J. to the defendant purporting to be executed in 1903 reinvested the title in him as said Andrew J. at that time was fully competent to execute the deed. It is further insisted by the defendant that the purported record of the action instituted by the plaintiff against the defendant in Kansas was not admissible in evidence in this case for the reason that there was no findings or judgment in the case and no judgment roll, and that the same was not certified to by the trial judge as required by the code of this state, and, further, that assuming that the record was properly authenticated, and there was proper findings and judgment, the same was incompetent as evidence in this action to establish the

insanity of the said Andrew J. at the time he executed the deed in controversy about a year after the deed was executed to the land in Kansas, and the defendant further contends that the evidence in the case fully justified the trial court in finding that the said Andrew J. was of sound mind at the time he executed the deed to the said defendant in 1903.

The first question naturally presented is: Was the title originally vested in the defendant, conveyed by him to his brother Andrew J. by the deed executed by himself and wife to the said Andrew J. on February 6, 1894? As will be observed, the court finds that said deed was caused to be "recorded by the defendant, and, when recorded, was returned to him by the register of deeds, and that defendant never parted with the possession of said deed except to have it recorded as aforesaid; that he never delivered said deed to any person." The defendant testified in part, as follows: "Exhibit 3 is a deed I executed to my brother, never delivered to him. Q. Mr. Davis, what did you do with this deed after you and your wife signed it? A. I sent it up here to Clark, S. D., for record. Afterward I received it back again. Exhibit 4 is the envelope in which I received it back, have kept it on file ever since with my papers. Q. What consideration, if any, was paid for this deed? A. Not anything. Q. You may state why you executed this deed? A. I did it in case I should die my brother would have something to make him comfortable during his life. Q. That is, you intended after you were dead that this should belong to your brother?" This was objected to, and no answer seems to have been given. The court then propounded the following question: "You may state if this deed has been in your possession all the time since it came from the register of deeds. A. It was in my possession all the time." These questions were objected to on the ground that they were incompetent, irrelevant, and immaterial and inadmissible under the pleadings, and for the further reason it is a transaction with a deceased person, and that it tends to dispute a written instrument and the record thereof. In our opinion these objections should have been sustained on the ground that the evidence related to transactions

between himself and his deceased brother, and that evidence as to such transactions was inadmissible under the provisions of section 486 of the Code of Civil Procedure of this state, which provides: "In civil actions or proceedings by or against executors, administrators, heirs at law or next of kin * * * neither party * * *shall be allowed to testify against such other party as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party." It will be observed that, by the provisions of this section, neither party shall be allowed to testify against the other party as to any transaction whatever with, or statement by, the testator or intestate unless, etc. While it is true that the witness does not in terms claim to testify to any transaction directly between him and his brother, still it was a transaction in fact between him and the brother, and it would not be competent for him to testify after the death of the brother as to what his intentions were in executing the deed, or what disposition was made of the deed after the death of that brother. Especially is this so in the case at bar, where the two brothers lived together in the same family, and where it appears from the evidence in the case that the deceased party resided in the family of the witness at the time of his death. It would be an exceedingly dangerous precedent to establish that under such circumstances the surviving party could testify as to what occurred in reference to a deed executed to the deceased, and as to retaining possession of the same during the lifetime of the deceased party. In such case testimony could be too easily fabricated and courts of justice misled by the statements of a witness seeking to invalidate his own deed by showing that no delivery of the same had ever been made. That this evidence was regarded as important by the court is clearly apparent from the fact that the court finds in its eighth finding of fact "that defendant now is, and since on or about December 30, 1893, has been, the owner in fee of said tract of land"; and that the court in its fourth finding of fact finds "that the defendant never parted with the possession of said deed except to have it recorded as aforesaid, that he has never delivered said deed to any person."

It appears from the testimony of the witness John B. Martine, who testified on the part of the plaintiff, that he had a conversation with Andrew J. Davis in the fall of 1902 regarding his Dakota land, from which it seems that the said Andrew J. Davis knew that he had land in South Dakota.

W. C. Seymour, Esq., a witness on the part of the defendant, testified that he was by profession a lawyer, and that he drew the deed to the land in controversy in February, 1904, from Andrew J. Davis to Michael B. Davis, and that: "Andrew J. Davis and the brother wanted me to draw up a deed to Michael B. Davis, and he said that he was staying out there at Davis' house. He wanted me to draw up the deed to Michael B. Davis, and in taking down the items I asked how much of a consideration he wanted. Andrew said he was living out there with M. B. Davis, that was his home, and he intended to make it his home, and he wanted his property deeded over to Mike. Then I said, 'If that's the case, all the consideration you need would be $1 or some thing like that,' and that's the way I happened to put that dollar in there. He gave the paper to Michael B. Davis after it was signed and acknowledged. I saw this signature of Andrew J. Davis written. I read the whole thing over to him before Andrew J. Davis signed it. After he signed it, he gave it to Michael B. Davis. Michael B. Davis, Andrew J. Davis, and myself were present at the time." It will be noticed from the testimony of the witness that Andrew J. Davis stated that he wanted his property deeded over to Mike. It would seem, therefore, from this evidence that Andrew J. Davis understood that he was the owner of the land in controversy, and that "he wanted his property deeded over to Mike." It is quite clear, therefore, that Andrew J. Davis claimed to be the owner of the property in controversy at the time he executed the deed for the same to his brother, the defendant in this action. Assuming, therefore, without deciding at this time, that the mere recording of the deed by the defendant and receiving the same from the register of deeds, and retaining the same ever thereafter, did not constitute such a delivery as would vest the title in Andrew J.

Davis, the admission of the evidence of the defendant before quoted was clearly error. As to the effect of recording a deed under such circumstances by the grantor, and retaining possession of the same, the authorities are very conflicting, but, in the view we take of the case, it will not be necessary to decide it on this appeal.

It is further contended by the appellant that the court erred in admitting in evidence over the objection of the appellant what purported to be the record of the register of deeds as to the party to whom the deed was returned. Witness Frank Mills testified that he was register of deeds; that the deed, Exhibit 3 (deed of February 9, 1894, from Michael B. Davis to Andrew J. Davis), was recorded in his office, and that he had a record of that instrument in the registry fee book. It shows to whom the deed was delivered when recorded. Exhibit 3 offered in evidence without objection. Thereupon the following offer was made on the part of the defendant: "We offer in evidence part of page 58, volume 2, register's fee book, which shows to whom this deed was returned for the purpose of showing to whom this deed, Exhibit 3, was returned after it was recorded." This offer was objected to among other grounds that it was incompetent, irrelevant, and immaterial. The objection was overruled, and the record admitted in evidence. We are of the opinion that the court was in error in admitting this record as tending to show to whom the deed was delivered after recording, for the reason that the law does not require any such record to be kept by the register of deeds, and therefore the record was inadmissible as proof as to whom the deed was delivered; the witness having testified that he was not the register of deeds at the time the entry in the fee book was made. See sections 866 to 873, inclusive, of the Political Code. The defendant in his evidence testified that he had the envelope in which the deed was returned to him, but this envelope, so far as disclosed by the record, was not offered in evidence; and hence the only evidence tending to corroborate the defendant in his statement that the deed was returned to him was the record received in evidence, and which was clearly inadmissible.

While ordinarily the errors of the court in admitting the above testimony would necessitate a reversal of the judgment, such a result does not follow in this case, for the reason that the court in its findings found that on September 1, 1903, the said Andrew J. Davis executed and delivered to the defendant a deed of the premises in controversy, and that at the time he executed said deed he was of sound mind and mentally competent to make the conveyance; hence under those findings the defendant would be entitled to judgment, regardless of the alleged errors found to have been committed by the trial court in the admission of evidence as to the delivery of the deed purported to have been executed by the defendant to the said Andrew J. Davis, deceased. In view, therefore, of these findings and the result that would legally follow, it becomes necessary to determine the correctness of the ruling of the court in rejecting the record of the Kansas court, offered in evidence on the part of the plaintiff, adjudging that Andrew J. Davis was of unsound mind and incompetent to make a conveyance of his property on the 8th day of August, 1902, in which action John B. Davis, the present plaintiff, was plaintiff, and Michael B. Davis, the present defendant, was defendant.

As we have seen, the plaintiff offered in evidence what purported to be a record of the proceedings of the court in Jewell county, Kan., in which it is claimed it is adjudged by the district court of that state that the plaintiff was insane at the time he executed a deed for a certain quarter section of land in Kansas on the 8th day of August, 1902, and it is contended on the part of the appellant that this record should have been admitted, and, when admitted, it established the fact that on the date mentioned the deceased was insane, and the presumption attaches that, said Andrew J. Davis being adjudged to be insane on that day he continued to be insane up to the time of his death. The offer was as follows: "The plaintiff offered in evidence a certified copy of the pleadings, judgment, and decree in the case of John B. Davis v. M. B. Davis in the district court of Jewell county, Kan. This is offered in evidence for the sole purpose of showing the mental condition of Andrew J. Davis as

determined in a judicial proceeding in the district court of Jewell
county, Kan., in which John B. Davis was plaintiff, and M. B.
Davis was defendant, being the same plaintiff and defendant,
respectively, in this case, in an action involving a quarter section
of land in the state of Kansas." This record was objected to by
the defendant as incompetent, irrelevant, and immaterial, inad-
missible under the pleadings, not properly certified and not the
best evidence; objection sustained and an exception allowed. It
will be observed that the offer was limited to the express purpose
of showing the mental condition of A. J. Davis at the time the
deed for the Kansas land was executed by A. J. Davis to the
defendant in August, 1902, and for no other purpose.

The contention of the respondent that this record was not
admissible under the pleadings in this case, and was immaterial,
is not well taken, as the record, if property certified to, was
clearly competent as evidence in the case at bar to prove the
mental condition of Andrew J. Davis at the time he executed the
deed for the Kansas land on August 8, 1902, as the parties were
the same, the question as to his sanity or insanity was involved
as in the case at bar, and the fact established by a prior judg-
ment in a case between the same parties and involving the same
question at issue in the subsequent case is competent as evidence
in such subsequent case, and ordinarily constitutes an estoppel as to
any further inquiry in regard to the facts so established by the
prior judgment.

In the leading case upon this subject of Cromwell v. County
of Sac, 94 U. S. 351, 24 L. Ed. 195, the learned Supreme Court
of the United States held: "The difference between the effect
of a judgment as a bar or estoppel against the prosecution of a
second action upon the same claim or demand and its effect as
an estoppel in another action between the same parties upon a
different claim or cause of action stated. In the former case
the judgment, if rendered upon the merits, constitutes an abso-
lute bar to a subsequent action. It is a finality as to the claim
or demand in controversy, concluding parties, and those in privity
with them, not only as to every matter which was offered and
received to sustain or defeat the claim or demand, but as to any

other admissible matter which might have been offered for that purpose. But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered." And that court in its opinion further says: "In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." An inspection of the pleadings in the Kansas action discloses the fact that the question of the sanity or insanity of Andrew J. Davis at the time he executed the Kansas deed in August, 1902, was involved, and an inspection of the purported judgment in that case shows that the mental condition of Andrew J. Davis at the time he executed that deed was definitely determined by the court in that action. It only remains, therefore, for us to determine whether or not the record of the Kansas court was sufficiently authenticated to entitle it to be admitted as evidence in the courts of this state.

An additional abstract was filed and served by the respondent in this case contradicting in certain particulars the abstract as presented by the appellant, and, in view of such conflict in the abstract, we are required to examine the original bill of exceptions, and determine therefrom the facts as disclosed by the proceedings and record offered in evidence. The record as presented and offered in evidence purported to be a certified copy of the complaint, answer, replication, and "journal entry" of that court. To each of these papers the clerk attached his certificate as follows (commencing with the petition): On the back of the petition were the following indorsements: "J. B. Davis, Plft. v. M. B. Davis, defendant. Petition filed March 26, 1904. M. W. Whitney, Clerk, Dis. Court." And attached thereto is the following certificate: "State of Kansas, Jewell

County—ss.: I, W. F. Keyes, hereby certify that I am clerk of the district court of Jewell county, Kansas, and as such clerk of said district court, have in my possession the records of said office, and I further certify that the above and foregoing is a true and correct copy of the petition filed in the district court of Jewell county, Kansas, on the 25th day of March, A. D. 1904, in the above entitled action. (Signed) W. F. Keyes, Clerk of the District Court of Jewell County, Kansas (with the seal of the court affixed). Witness may hand and seal this second day of December, A. D. 1907." To this the following certificate was added: "State of Kansas, Jewell County—ss.: I, W. F. Keyes, clerk of the district court of Jewell county, Kansas, further certify that R. M. Pickler is the duly elected and qualified judge of the 15th judicial district, sitting in and for Jewel county, Kansas, and was such judge on the 26th day of March, A. D. 1904, and had continuously been since the 26th day of March, A. D., 1904, and is now the judge of said district court of Jewell County, Kansas. Witness my hand and seal this 2nd, day of December, A. D., 1907." Following this was a certificate purporting to be made by the judge of the court, but was not signed by him. Practically the same certificates were made by the clerk on the purported copy of the answer, the reply, and the journal entry. To the copy of the journal entry was added the following certificate signed by the judge: "State of Kansas, Jewell County—ss.: I, R. M. Pickler, hereby certify that I am judge of the 15th judicial district sitting in and for Jewell county, Kansas, and that W. F. Keyes is the legally elected and duly qualified clerk of the district court of Jewell county, Kansas, and has in his possession the records of said office, and that the signature attached to the certificate of the clerk is the signature of W. F. Keyes, and entitled to full faith and credit. (Signed) R. M. Pickler, judge of the 15th judicial district for Kansas. Witness my hand this 3rd day of December, A. D. 1907." It will be noticed that the only certificate purporting to be signed by the district judge concludes as follows: "And that the signature attached to the certificate of the clerk is the signature of W. F. Keyes, and entitled to full faith and credit."

It is contended by the respondent that the certificate of the judge only applies to the certificate of the clerk to the journal entry, and did not apply to the prior certificates of the clerk made upon the petition, answer, and reply, and it is further contended by the respondent that the omission of the words required by our Code (section 529 of the Code of Civil Procedure), "that the attestation is in due form," renders the certificate fatally defective. But we are of the opinion that the judge's certificate attached to the journal entry which purports to be the findings and judgment in the case applies to the clerk's certificates previously made, attached to the copy of the petition, answer, and reply, and that the omission of the words "that the attestation is in due form" is virtually supplied by the statement that the certificate of the clerk is "entitled to full faith and credit." Clearly, if they were not "in due form," they were not "entitled to full faith and credit." No case has been called to our attention in which it has been held that the omission of the words "that the attestation is in due form" has rendered the record inadmissible.

The further contention of the respondent in support of the judge's ruling in excluding this record that there were no findings or judgment in the case is in our opinion untenable. Following the pleadings is what is denominated the "journal entry," and the recitals therein are as follows: "In the district court of Jewell county, Kansas. John B. Davis, Plaintiff, v. M. B. Davis, Defendant. Journal entry. Comes now on the 17th day of June, A. D. 1904, the above-entitled cause for hearing, a jury being waived, and the cause tried by the court; the plaintiff appearing in person and by his attorneys, * * * and the defendant appearing in person and by his attorneys. * * * Thereupon the plaintiff introduced his evidence and rested his case, after which the defendant introduced his evidence and rested his case, and the plaintiff introduced his evidence in rebuttal and rested his case, and the defendant introduced his evidence in surrebuttal and rested his case, after which the case was argued by counsel for plaintiff and counsel for defendant, and after the argument of counsel the court took the same under advise-

ment and rendered judgment as follows, to wit: The court finds that John B. Davis, plaintiff herein, is the sole and only heir of Andrew J. Davis, now deceased. The court further finds that on the 8th day of August, 1902, Andrew J. Davis was of unsound mind and that the deed executed by said Andrew J. Davis on the 8th day of August, 1902, to M. B. Davis to the following described property (describing it), in Jewell county, Kansas, should be considered and adjudged to be an equitable mortgage on said land above described for the amount of $1,000 bearing interest at the rate of 6 per cent. per annum from its execution, and that said judgment shall be a lien against said land described in plaintiff's petition in favor of said defendant M. B. Davis, for and in the amount of $1,111.25, with interest thereon at the rate of 6 per cent. from this date. It is further adjudged that the costs of said action shall be divided equally between the plaintiff and defendant, and it is the further judgment of this court that the execution shall issue out of the above-entitled court against the real property described to satisfy said judgment of $1,111.25, interest thereon. And it is the further judgment of this court that on the payment of the above-described judgment, together with interest thereon, and one-half of said costs taxed at $117.10, said mortgage shall be canceled, set aside, and held for naught, and the plaintiff above named decreed to be the legal owner of said property described in plaintiff's petition and in this judgment. (Signed) R. M. Pickler, Judge." On the back of said journal entry are the following indorsements: "Filed June 18, 1904. M. W. Whitney, Clerk, District Court, by W. F. Keyes, Deputy. Journal entry. Entered Journal L. Page 310." While the findings and judgment purporting to be contained in this journal entry are not as formal as such findings and judgment are required to be by the courts of this state, yet we are of the opinion that they are sufficiently formal to constitute valid findings and judgment in that action, and that the court in excluding this record of the Kansas court committed error for which the plaintiff is entitled to a new trial. While it is true that the findings and judgment of the district court of Kansas only established the fact that on the 8th day of August,

1902( when the said Andrew J. Davis executed the deed to the defendant for the Kansas lands, he was insane, and presumptively the mental condition of said Andrew J. Davis continued the same up to the time he executed the deed to the defendant for the Dakota property, this presumption is rebuttable, and may be overcome by evidence on the part of the respondent satisfying the court that at the time he executed the deed on the 1st day of September, 1903 to the defendant, he had recovered his mental faculties, and was mentally competent to execute the deed in controversy in this action. For the error of the court in excluding the record of the district court of Kansas, the judgment must be reversed.

The judgment of the circuit court and order denying a new trial are reversed.