SOPHIE    GRUNDMANN    and    WILLIAM    F. GRUNDMANN, Appellants, v. OTTO WILDE et al.

Division Two, February 17, 1914.

1. **WILL CONTEST: Undue Influence: Question for Jury.** Where the evidence for plaintiffs in a will contest tends to show. that testatrix lived with her son, who had charge of all her business; that the son had more influence over her than anybody else; that he refused to speak to his sister when she came on a visit, and, in her presence, whispered to the mother, with the result that conversation ceased; that the son's treat-

ment of the sister and her husband was such that they ceased to visit the mother; that the son took a memorandum of the first will to the lawyer who drew it; that the will in suit was drawn from the first will with such changes as were suggested by the son in the absence of the mother; and where the will markedly favored the son, it is *held* that the question of undue influence should have been given to the jury.

2. ———: ———: **Fiduciary Relation: Presumption.** The law presumes, in the absence of a showing to the contrary, that a codicil which gives $12,000 to one sustaining a fiduciary relation to the testatrix, resulted from undue influence.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

Reversed and remanded.

*Ben C. Lindsay* and *S. C. Rogers* for appellants.

(1) The court erred in refusing to submit to the jury the question of testamentary capacity. Holton v. Cochran, 208 Mo. 314; Turner v. Anderson, 236 Mo. 523; Knapp v. Trust Co., 199 Mo. 640; Roberts v. Bartlett, 190 Mo. 680; Mowrey v. Norman, 204 Mo. 173. (2) The court erred in refusing to submit to the jury the question of undue influence. Mowrey v. Norman, 204 Mo. 173; Bradford v. Blossom, 207 Mo. 177; Meier v. Buchter, 197 Mo. 68. (3) The court erred in giving to the jury at the close of plaintiffs' case the instruction directing them to find the will and codicil in question was the will of Friedericke Wilde. Mowrey v. Norman, 204 Mo. 173; Holton v. Cochran, 208 Mo. 314; Roberts v. Bartlett, 190 Mo. 680; Bradford v. Blossom, 207 Mo. 177; Crum v. Crum, 231 Mo. 626.

*Collins, Barker & Britton, George W. Lubke, Jr., E. L. Gottschalk, Julius T. Muench* and *Walter Diehm* for respondents.

(1) The test of capacity to make a will is that the testatrix should have sufficient mental capacity to understand the nature and character of her property, the

natural objects of her bounty and the disposition she is making of her estate by the will. The law does not require that high degree of intelligence that may be necessary in the execution of contracts or in administering upon estates. Current v. Current, 244 Mo. 429; Winn v. Greer, 217 Mo. 420; Archambault v. Blanchard, 198 Mo. 384; Roberts v. Bartlett, 190 Mo. 696; Hamon v. Hamon, 180 Mo. 685; Southworth v. Southworth, 173 Mo. 59; Story v. Story, 188 Mo. 110; Hughes v. Rader, 183 Mo. 630; Crossan v. Crossan, 169 Mo. 631; Crowson v. Crowson, 172 Mo. 691; Sehr v. Lindemann, 153 Mo. 288; Cash v. Lust, 140 Mo. 630; Riley v. Sherwood, 144 Mo. 355; Riggin v. Westminster College, 160 Mo. 570; Wood v. Carpenter, 166 Mo. 465; Brinkman v. Rueggesick, 71 Mo. 553; Farmer v. Farmer, 129 Mo. 534. (2) Where there is no substantial evidence (as distinguished from scintilla of evidence) that the testatrix does not possess mental capacity to make a valid will, it is the duty of the court so to declare as a matter of law; and as the trial court has properly found, there was no such substantial evidence, this appeal must be affirmed. Winn v. Greer, 217 Mo. 420; Catholic Univ. v. O'Brien, 181 Mo. 68; Hamon v. Hamon, 180 Mo. 685; Sehr v. Lindemann, 153 Mo. 288; Fullbright v. Perry County, 145 Mo. 432; Schierbaum v. Schemme, 157 Mo. 1; Martin v. Bowdern, 158 Mo. 379. (3) There is no evidence of any influence in this case, no evidence that influence was undue, no evidence that such influence was exercised or that it was present in active exercise. Turner v. Anderson, 236 Mo. 541.

ROY, C.—This is a proceeding to contest the will of Mrs. Fredericke Wilde. The jury under a peremptory instruction returned a verdict establishing the will.

Henry T. Wilde, the husband of testatrix, died in 1900, leaving his said widow, then sixty-seven years

old, a son, Otto, twenty-nine years old, a defendant herein, and a daughter, Sophie Grundmann, then thirty-one years of age, who had been married in 1890 to her coplaintiff, Dr. F. William Grundmann.

Henry T. Wilde had left a will, giving to his widow a life estate in property on Franklin avenue and on Cass avenue, devising the residue of his estate to his two children.

Otto appears to have remained unmarried and lived at home with his father and mother. After the father's death, he and his mother lived together in the Franklin avenue property. During his mother's, widowhood, Otto attended to all his mother's business. She accumulated seventy-three thousand dollars from the income of the property devised to her. About the beginning of the year 1902, Otto called at the office of Judge Geo. W. Lubke, with a memorandum of a will, which, as he stated, his mother desired to make. Judge Lubke prepared the will in accordance with the memorandum and mailed it to Mrs. Wilde, who signed it and had it witnessed by some neighbors. It was taken back to Judge Lubke's office by Otto and there kept on file. Just prior to January 30, 1903, Otto told Judge Lubke of certain changes that his mother desired to. make in the will. Judge Lubke, using the old will in connection with the statement of the changes to be made, prepared the will in controversy, and on the latter date Mrs. Wilde and Otto called at Judge Lubke's office, where, in the absence of Otto, the will was signed by the testatrix and witnessed by Albert Gerst and Julius T. Muench. By that will she gave to certain friends and collateral kindred small sums amounting to $1600 and to various charitable institutions $2800. One half of the residue she devised absolutely to her son Otto; and out of the other half she gave Mrs. Grundmann $2500 absolutely, and the balance of that half to the Lincoln Trust Company for the use of the four children of Mrs. Grundmann and the future born

children.   The net income to be used for their benefit
until they became of lawful age, when the share of the
capital fund belonging to each should be paid to them
respectively.   On December 2, 1903, Mrs. Wilde and
Otto again called on Judge Lubke.   Otto was sent out
of the room, and in his absence the codicil was pre-
pared under the direction of Mrs. Wilde, giving to
Otto certain property on North Jefferson avenue
which she had purchased for twelve thousand dollars
subsequent to the making of the will.   The codicil was
signed and witnessed by Mr. Gerst and by William L.
Morrison.   The will and codicil were proved on the
trial by the testimony of Judge Lubke and of the sub-
scribing witnesses, who clearly testified to the ap-
parent sound condition of her mind.

The testimony for the plaintiffs showed that Mrs.
Wilde drank wine and brandy and sometimes beer
from 1867 until her death, and that at times she was
under the influence of liquor; that at such times she
was quarrelsome, tearful and religious; and that after
1880 she would at times become so under the influence
of liquor that she would fall to the floor and would
have to be carried to bed; and on numerous occasions
had convulsions and spasms; and that the liquor habit
became stronger; that at times she would ramble in
her talk; that in 1883 she locked herself up in her
room for two or three days; and that after that time
she had nephritis, bladder trouble, varicose veins,
dropsy, chronic headache, dizziness and liver trouble,
and could not see well.   However, it was conceded by
plaintiffs that she did her own housework, including
washing, with occasional assistance.   She seldom went
away from home.

Mrs. Grundmann testified as follows:   "She
would fuss and quarrel with my father and me, and at
times my brother Otto would step in and say, "That is
enough, mama," and she would be still.   She would

say, "My son says so and I have to be still." She also testified that after her father's death on her visits to her mother's home her brother would not speak to her, but went and whispered to her mother. She then testified as follows: "Q. Then would there be any change in your mother's actions? A. The minute my brother stepped in she was altogether different. Q. How do you mean different? Tell the jury. A. She was otherwise from what she used to be. I used to take care of her all the time, as long as I can remember; I have washed and combed her hair, and I done that all along, and we had a nice conversation, but after my brother came in it was all silence after we had a nice conversation, and he would sit there saying nothing, and we would sit there, nobody knew what to say. At last I spoke, I would get up and leave the house mostly every time, and I got up crying and I came to my home nervous and prostrated from the treatment I had been getting."

Mrs. Wilde was executrix of her husband's will and Mrs. Grundmann filed exceptions to her final settlement. The case was tried about the beginning of the year 1903 and was decided against Mrs. Grundmann. From that time until her death in 1909, Mrs. Grundmann did not visit her mother. Dr. Grundmann testified that he treated Mrs. Wilde as her physician until four or five days after the death of her husband; that he ceased treating her because he was roughly mistreated by Otto Wilde and that Mrs. Wilde charged him with wanting to attack the will and that Otto gave him to understand that he was not wanted in the house.

The petition charged want of testamentary capacity and undue influence by Otto Wilde over the mind of his mother, and charged that Otto at the time of the execution of the will and for many years prior thereto and up to her death had full charge of all her business.

I. Whether the evidence is such that the question of mental capacity, considered by itself and disconnected from the question of undue influence, **Undue** should have been withdrawn from the jury, **Influence:** we will not decide. Mental capacity is so **Evidence:** **Jury** interwoven with the question of undue in- **Question.** fluence as to make it a factor in this case until the controversy as to undue influence is settled. On the latter question only one side has been heard. We have not set out the evidence at length as would have been done had the question come to us on a full hearing. We hold that the issue of undue influence should have been submitted to the jury, both as to the will and as to the codicil. The evidence for plaintiff shows that the son, Otto, and his mother lived together; that he had charge of and attended to all her business; that he had more influence over her than anyone else; that he refused to speak to his sister whenever she came on a visit, and, in her presence, whispered to the mother, with the result that conversation ceased; that his treatment of the sister and her husband was such that they did not visit the mother's home after the beginning of 1903. He took the memorandum from which the first will was drawn to Judge Lubke. That will was drawn up and sent to her. She executed it and Otto took it back to Judge Lubke. The will in controversy was drawn from the first will with such changes as were suggested by Otto in the absence of his mother. We do not attribute any special importance to the fact that he was made executor of the will without bond. He was the only son, and, no doubt, under the circumstances, it was a proper thing to relieve him of giving bond.

Undue influence may be shown by circumstantial evidence. [Roberts v. Bartlett, 190 Mo. 1. c. 700.]

In this case there is direct evidence of such undue influence. Giving credence to that evidence, in the absence of any showing to the contrary, we find that

he used his influence to shut the sister and her husband out of the mother's heart and home, and followed that up by delivering to a lawyer a memorandum of a will, which was drawn up and subsequently executed by her.

II.   The fact that there was a fiduciary relation between the mother and son stands confessed.   He attended to all her business.   By the codicil he was given a special legacy of property worth $12,000.   The law presumes, in the absence of a showing to the contrary, that such codicil was the result of undue influence.   [Roberts v. Bartlett, supra; Mowry v. Norman, 204 Mo. 173.]

**Fiduciary Relation.**

The judgment is reversed and the cause remanded for a new trial.   *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court.   All the judges concur.