EKERN et al, Respondents, v. ERICKSON et al, Appellants.

(157 N. W. 1062.)

(File No. 3827.   Opinion filed May 27, 1916.   Rehearing denied July 10, 1916.)

1.   **Appeals—Brief—Assignment of Errors—Reference to Specifications of Errors, Necessity—Court Rule.**

Under Supreme Court Rule 5 (140 N. W. viii) declaring that every assignment of error shall clearly refer, by number, to corresponding specification of error, and shall state the page of the settled record where such specification may be found,

held, that assignments of error, being numbered, are sufficient, though containing no reference to specifications, where a brief showed that specifications were not printed therein because the assignments or error were identical with those accompanying the notice of intention, and where most of the assignments refer to pages of settled record and of brief where all matter excepted to is found.

Smith, J., dissenting.

2. **Appeals—Admitting Evidence in Will Contest—Prejudice—Harmless Error.**

Error concerning rulings on evidence, in a will contest case, is not ground for reversal, there being no showing of prejudice.

3. **Wills—Contest—Evidence of Mental Capacity—Absence of Attempt to Prove, Effect, as to Materiality.**

In a will contest case, where contestants on the trial did not attempt to prove that testatrix was not of sound and disposing mind and memory, although appellants requested a finding upon that issue, which finding the court failed to make, held, that testimony of persons familiar with testatrix that she was mentally capable of making a will was immaterial.

4. **Same—Undue Influence Concerning, Competency—Rebuttal.**

In a will contest, where undue influence was alleged, held, that testimony tending to show testatrix' physical and mental weakness, age, and other infirmaties, as well as evidence of her statements not consistent with the terms of the will, are admissible as tending to show inability to resist improper influence; as was testimony of opposing witnesses in rebuttal to show testatrix' mental alertness and knowledge of affairs, and relevant to her capacity to resist such influence.

5. **Evidence—Witnesses—Transactions With Decedent—Will Contest—Husband of Contestant Heir, Competency "Interest" in Litigation—Statute.**

Under Code Civ. Proc., Sec. 486, Subd. 2, as amended by Laws 1913, Ch. 371, providing that in civil actions or proceedings by or against executors, administrators, heirs at law, or next of kin, in which judgment may be rendered for or against them, neither party, * * * nor any person who has or ever had any interest in the subject of the action adverse to the other party, or to his testator or intestate, shall be allowed to testify against such other party as to any transaction whatever with, or statements by, the testator or intestate, unless called by the opposite party, held, that the husband of one of the heirs contesting a will may, where the property involved was not the homestead of witness and his wife, testify concerning the undue influence alleged to have been exercised over testatrix by certain legatees; that while in the ordinary sense such witness was "interested" in the result of the litigation, he never had

"any interest in the subject of the action," nor could any "judgment be rendered or any order entered for or against him in said proceedings."

6. **Same—Witnesses—Transactions With Decedent—Widow of Decedent's Son, Competency—Guardianship, Effect of—Party to Proceeding.**

In such case, the widow of decedent's son, was a competent witness concerning the alleged undue influence exerted over testatrix in connection with her will; and the fact that such widow was guardian of her minor children, who, through their deceased father, had an interest in the estate which was the subject of litigation, yet she herself had no interest therein which barred her as such witness; nor did the fact that, before the trial, she dismissed the contest as to herself, affect her competency, or the validity or binding effect of the judgment thereafter entered; she not being a necessary party to the proceedings; and this even though it be assumed that, as a party to the action, she would not be competent to testify, but became competent by reason of such dismissal.

7. **Same—Contest of Will—Testimony of Legatee, Competency, on Behalf of Contestants—Statute.**

Under Code Civ. Proc., Sec. 486, Subd. 2, as amended by Laws 1913, Ch. 371, declaring that in civil actions or proceedings by or against executors, administrators, heirs, or next of kin, in which judgment may be entered for or against them, no party having any interest in the action adverse to the other party, may testify, unless called by the adverse party, held, that a legatee under a will was a competent witness to testify on behalf of contestants as to undue influence exerted over testatrix; that the interest in the subject of the action which disqualifies must be a financial one, and adverse to the interest of the objecting party; and her interest was not such adverse one, she being in no event entitled to share in the estate unless the will was upheld.

8. **Same—Contest of Will—Competency of Devisees—Statute.**

Under such statutes, testatrix' sons, legatees under the will, who were seeking to uphold it, are incompetent to testify as to their failure to attempt to influence testatrix.

9. **Same—Will Contest—Undue Influence—Testatrix' Statement Inconsistent With Testamentary Purpose, Competency.**

The testimony of third persons as to statements of testatrix expressive of a testamentary purpose inconsistent with the terms of a contested will, is competent and relevant in connection with other evidence, as tending to show susceptibility to undue influence, though incompetent to prove acts of undue influence.

10. **Wills—Contest—Undue Influence—Burden of Proof.**

Under a will contest proceeding involving undue influence, the burden of proof rests upon him who asserts undue influence. ...

**11. Same—Motive and Opportunity to Invalidate Wills, Sufficiency of—Undue Influence—Circumstantial Evidence.**

Circumstantial evidence alone may sufficiently indicate undue influence exercised upon testatrix. But, held, further, that evidence which merely shows that a party benefited by a will had the motive and opportunity to exert such influence, is not sufficient to invalidate the will, where there is no evidence that he did exert such influence.

**12. Same—Undue Influence, Inference of, From Circumstantial Evidence.**

In will contest proceedings, held, that the exercise of undue influence in fact may be inferred from surrounding circumstances, taken in connection with statements made by the persons alleged to have exercised such influence, and who are beneficiaries under the will.

**13. Same—Undue Influence—Finding, Sufficiency of Evidence to Sustain.**

In a will contest, involving alleged undue influence, held, that the testimony bearing upon alleged undue influence exercised by certain devisees and legatees, upon testatrix was sufficient to sustain a finding of undue influence, which invalidated the will.

Appeal from Circuit Court, Moody County. HON. JOSEPH W. JONES, Judge.

Will contest by Annila Ekern and others, against Peter Erickson and others, began in probate court, where the instrument was admitted to probate, and appealed by contestants to the Circuit Court. From judgment there for contestants, and from an order denying a new trial, proponents appeal. Affirmed.

*Ira F. Blewitt,* for Appellants.

*F. A. Warren, Hanten & Hanten,* and *Perrett F. Gault,* for Respondents.

(1) To point one of the opinion, Respondents cited: Schmidt v. Carpenter, 27 S. D. 412; Inlagen v. Gary, 147 N. W. 965 (S. D.)

(5) To point five of the opinion, Respondents cited: Code Civ. Proc., Sec. 486; Laws 1913, Ch. 371; Witte v. Koeppen, 11 S. D. 598; Bunker v. Taylor, 10 S. D. 526; Ackman v. Potter, 88 N. E. 231.

(6)  To point six of the opinion, Respondents cited: 40 Cyc. 2276; Freeman v. Easley, (Ill.) 7 N. E. 656.

(7)  To point seven of the opinion, Respondents cited: 40 Cyc. 2281.

SMITH, J.  [1] Respondent challenges the sufficiency of appellants' assignments of error for the reason that they contain no references to the specifications of error upon which they were founded. Appellants' brief contains a statement that specifications are not printed in the brief, "inasmuch as the assignments of error herein printed are identical with those accompanying the notice of intention," etc. The assignments being numbered, a majority of the court are of opinion that this is a sufficient reference to the specifications of error. Most of the assignments refer to pages of the settled record and of the brief where the *matter* excepted to is found. In my judgment this is not sufficient. Rule 5 (140 N. W. viii) requires that:

"Each assignment of error—except one assigning as error, the denying of a new trial—shall clearly refer by *number* to the corresponding specification of error, and *shall also state the page of the settled record* where such specification is to be found."

Hepner v. Wheatley, 33 S. D. 34, 144 N. W. 923, charitably prescribes what I deem to be an amendment to this rule, viz.: That the specifications of error may be printed in the printed record, and the page of the *printed record* referred to, instead of referring to the page of the settled record, without either a reference to the number of the specification or the page of the settled record. In this case the specifications of error are not contained in the *printed record,* nor do the assignments of error contain any references by number or page to specifications in the settled record. This is not even a substantial compliance with the rule. In my judgment this court should repeal or modify its rules or enforce them. In the Hepner Case, supra, and in Sweeney v. Hewett, 34 S. D. 302, 148 N. W. 503, we have in effect annulled or amended rule 5 by prescribing something else "just as good." In this case, there are 29 assignments of error, and not a single one of them complies with the rule, even as construed in the Hepner Case. This case falls squarely within syllabus 3 of the Sweeney Case. A majority of my Associates, however, seem to

be of opinion that these defects may be covered by that mantle of charity commonly known as "a substantial compliance." I record my dissent, before taking up the legal propositions supposed to be presented by the alleged assignments of error.

A brief statement of the facts will aid in the consideration of the questions presented upon this appeal: Peter Erickson, Sr., with his wife, Anna Erickson, came to Dakota Territory, and settled on a homestead in Moody county, many years ago. They had five children, Annila, Robert P., Peter, Erick P., and Andrew. Peter Erickson, Sr., died intestate, November 30, 1909, leaving an estate consisting of over 600 acres of land and some personal property. The son Andrew never married and died before his father. The son Erick P. also died before his father, leaving a widow, Regina, and five children. The estate of Peter Erickson, Sr., was duly probated and distributed, one-third to his widow, Anna Erickson, the other two-thirds in equal parts to Robert, Peter, and Annila, with an equal share to the children of the son Erick, deceased. In the year 1900, for reasons which are not material here, Peter Erickson, Sr., and his wife separated. Pursuant to this separation, Peter Erickson, Sr., made arrangements with Regina, widow of his deceased son Erick, to build a small house close to where Regina lived for the use of his wife, under an agreement that Regina was to care for and render such assistance as was necessary. Under this arrangement the wife remained in Regina's care from that time until about April, 1910. In that month the son Robert returned from North Dakota with his family. Very shortly thereafter his mother was removed from Regina's place to his home, where she remained until her death, April 27, 1913. The daughter-in-law, Regina, was fully paid out of the estate of Peter Erickson, Sr., for her services in caring for and assisting Anna Erickson during the time she remained with her, a period of about 9 years and 4 months. In January, 1910, while living in the house near Regina Erickson's, Anna Erickson executed a will, which was drawn by Hon. Lewis Benson, an attorney. Robert Erickson testified that he sent for Mr. Benson to draw this will at the request of his mother, Anna Erickson, and that he was in the house when the will was drawn

and executed, though not in the room. This will was not before the court, although from testimony in the record it may be inferred that its terms were similar to the later will in contest here. In August, 1910, and after Anna Erickson had been removed from Regina's place, and was residing in the home of Robert Erickson, the second will, which is in contest, was executed. It was drawn by the same attorney, Mr. Benson. Robert Erickson also testified that he sent for Mr. Benson to draw this second will at the request of his mother, Anna Erickson. By the terms of this will the daughter Annila (Ekern) was given a bequest of $500, the five children of Erick P. Erickson, deceased, her grandchildren, were given each $5, Regina Erickson, their mother, was given $50, and all the residue of her property, real and personal was given to the two sons, Peter and Robert. The defendant Halverson was named as executor. This will was filed for probate in the county court of Moody county, and was contested by all the heirs and devisees except Peter and Robert, who seek to sustain the will.

The objections filed to the probate of the will are quite lengthy, but in substance allege that Peter and Robert induced their mother, Anna Erickson, to remove from the home of Regina Erickson with the purpose of gaining her confidence and securing an influence over her, and by misrepresentations and divers wrongful wiles procured and induced the said Anna Erickson to execute the will in their favor; that thereafter she was compelled to remain in the home of Robert Erickson and was not permitted to leave the house, and was kept under restraint; that at the time of the alleged execution of the will Anna Erickson was sick and feeble, had been blind for many years, unable to read or write, was confined to her bed, was unable to wait upon or care for herself, was 84 years old, weak-minded, and subject to influence; and that said will, if executed by her, was obtained by undue influence on the part of Peter and Robert Erickson.

The probate court entered findings and conclusions adverse to the contestants, admitted the will to probate, and appointed Halverson as executor. The contestants appealed to the circuit court, demanding a new trial. The cause was placed on the April, 1914, calendar for trial. Regina Erickson appeared in the action as guardian of the estates of her two minor children. The cause be-

ing called for trial, Regina, as guardian of said minor children, asked to be discharged and dismissed as contestant of the will, which was granted over the objections of the proponents, Peter and Robert Erickson. The case was called for trial April 30, 1914, and was tried by the court without a jury. On August 11, 1914, the court filed findings of fact and conclusions of law to the effect that before and at the time of making said purported will, on August 8, 1910, Anna Erickson was acting under undue influence, and entered a judgment reversing, vacating, and setting aside the procedings admitting the will to probate. Thereafter Halverson, as executor, and Peter and Robert Erickson, presented a motion for a new trial, which was denied, and this appeal is from the judgment and an order overruling the motion for a new trial.

[2] Assignments of error 1 to 17, inclusive, relate to rulings on evidence. A careful examination of all of them satisfies us that, though some are perhaps erroneous, none of them are shown to have been prejudicial, and therefore would not constitute reversible error. State v. Squirrel Coat, 32 S. D. 569, 143 N. W. 958; French v. Bank, 35 S. D. 152, 151 N. W. 286. We do not deem any of them of sufficient importance to warrant separate discussion. Appellants requested a finding upon the issue of mental capacity of testatrix at the time she executed the will, and, though the trial court made no finding upon that issue, this neglect or refusal is not assigned as error.

[3, 4] Respondents, contestants of the will, alleged that Anna Erickson was aged, feeble, blind, and unable to read and write, sick, confined to her bed, somewhat weak-minded, and that she lacked mental capacity to execute a will. But at the trial it seems they did not attempt to prove as a specific fact that she was not of sound and disposing mind and memory when she executed the will. The testimony of Mr. Benson, who drew the will, of the clergyman, who visited her, and of other witnesses, who believed her to be mentally capable of making a will, therefore became immaterial, as it related to the mental capacity of the testatrix at the time the will was executed. But the testimony of contestants' witnesses to show physical and mental weakness, age, and other infirmities, and even statements inconsistent with the terms of the will, was competent, as tending to show inability to resist improper

influence, while the testimony of Mr. Benson and other opposing witnesses to show mental alertness and knowledge of affairs was properly rebuttal, and relevant to her capacity to resist such influence. In re Colbert's Estate, 107 Am. St. Rep. 459, 466, note. Statements inconsistent with the terms of the will, it is said, "do not of themselves establish undue influence or fraud, but they do tend to show what manner of man he was when making them, and may, in connection with other evidence, convince the jury that the will in question is fatally infected with undue influence." 107 Am. St. Rep. 467. Smith v. Keller, 205 N. Y. 39, 98 N. E. 214, relied upon by appellants, in effect sustains this rule, although the judgment of the trial court was reversed on the ground that the statements received in evidence were not relevant to her mental or physical condition, and were only offered for the purpose of improperly getting before the jury statements of fact that might affect them in determining whether the will was the result of coercion or duress.

[5] Mental capacity of the testatrix not having been challenged by an assignment of error for want of or refusal to make findings, we may assume its existence. The decisive issue of fact, therefore, is embodied in the finding of the trial court:

"That the said written instrument dated on the 8th day of August, 1910, purporting to be the last will and testament of said Anna Erickson, deceased, and signed by her, was not the free act and will of said Anna Erickson, and its execution by her and the purported disposition therein of her property was brought about by undue influence over her, exerted and exercised by her two sons before said execution, which undue influence dominated and controlled her mind at the time of the making, signing, and publication of said purported last will."

Appellants contend that incompetent evidence, which would be decisive of this issue, was admitted by the trial court, and that the rulings admitting it constitute reversible error, citing Chapman v. Greene, 18 S. D. 505, 101 N. W. 351. The evidence objected to was the testimony of Nels Ekern, husband of Annila Ekern, one of the contestants, and that of Regina Erickson, widow of Erick Erickson, deceased, the brother of Peter and Robert Erickson. Objection to this testimony was founded upon subdidivsion 2, § 446, Code Civ. Proc., 1877, which has several times

Laws of 1913. Was the testimony of these witnesses incompetent under this statute? The amendment does not change subdivision 2, § 446, Code Civ. Proc. 1879, which has several times been construed by this court. Witte v. Koeppen, 11 S. D. 598, 79 N. W. 831, 74 Am. St. Rep. 826; Bunker v. Taylor, 13 S. D. 434, 83 N. W. 555; Davis v. Davis, 24 S. D. 474, 124 N. W. 715; Jones v. Subera, 25 S. D. 223, 126 N. W. 253; Chapman v. Greene, 27 S. D. 178, 130 N. W. 30.

The real property involved in the contest of the will was not the homestead of the Ekerns. Nels Ekern acquired no interest under the will in the estate of Anna Erickson, which is the "subject of the action." In Chapman v. Greene, supra, this court said:

"This statute should be strictly construed, so as not to be held to apply to any person or testimony not clearly within its provisions."

In Witte v. Koeppen, supra, the court said:

"It seems to be well settled that when the enacting clause is general in its language and objects, and a proviso is afterwards introduced, such proviso should be construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms; and those who set up such exception must establish it as being within the words, as well as within the reason thereof" —citing Potter v. Bank, 102 U. S. 163, 26 L. Ed. 111.

The court also quotes with approval from the case of Lobdell v. Lobdell, 36 N. Y. 327:

"It will not suffice to say the case is within the spirit of the enactment, unless a fair construction of the language used will bring it within the enactment itself. The subject of the section is the allowance of parties to be witnesses in their behalf, and its object is to provide generally for their examination as witnesses, and the specific exceptions to such examination. The Legislature having undertaken to specify the exceptions, the courts cannot allow any that are not specified by the Legislature."

It may be true that in the ordinary sense the witness Nels Ekern was "interested" in the result of the litigation, but clearly he never had "any interest in the *subject of the action*," nor could any "judgment be rendered or any order entered *for or against him* in these proceedings." In the Witte Case, supra, it is said:

"This court is not at liberty to disregard the plain and express terms of the statute upon any theory as to its spirit, or what it ought, or what the Legislature might have intended it, to be, when the statute is plain and unambiguous, as courts are not permitted to search for its meaning beyond the statute itself."

[6] Was Regina Erickson, widow of Erick Erickson, deceased, a competent witness. She stood in precisely the same relation to the estate of Anna Erickson as did Nels Ekern, son-in-law of the decedent, except that she orginally appeared as guardian of her two minor children and joined in the contest of the will. The minor children, through their deceased father had an interest in the estate the "subject" of the litigation. Regina herself never had or acquired any interest in this estate, except that which she represented as guardian. As guardian she was at perfect liberty to join or refuse to join in the contest of the will. Before the trial and upon her own motion, the trial court permitted a dismissal of the contest as to her, and she thereupon ceased to be a party to the action or proceedings. Appellants excepted to the order of dismissal, but have not assigned it as error. To permit her withdrawal from the contest could in no manner affect the validity or binding force and effect of the judgment to be thereafter entered. She was in no sense a necessary party to the proceeding, and while she had a legal right as guardian of her children to join in the contest of the will, she had a right equally as plain to cease to be a party, and appellants had no legal right to resist her application or control her conduct as guardian of her minor children, even though it be assumed that, as a party to the action, she would not be competent to testify, but became competent by reason of such dismissal. Freeman v. Easly, 117 Ill. 317, 7 N. E. 656. We have no hesitation in reaching the conclusion that the trial court did not err in overruling appellants' objection to the testimony of this witness as a party to the action, or because of her supposed interest in the subject of the action.

Appellants cite James v. Fairall, 168 Iowa, 427, 148 N. W. 1029, construing a section of the Iowa Code similar to section 486 of our Code of Cvil Procedure. That case does not sustain appellants' contention. It does hold that the dismissal of the suit as against the witness would remove his incompetency *as a*

*Party,* but holds that the witness was incompetent because he was a son and heir of the decedent and was *interested* in the estate.

[7]   Regina Erickson was a legatee under the will of Anna Erickson. Was she for that reason disqualified when called as a witness on behalf of contestants? We think not. The real interest of the parties control. 40 Cyc. 2335 (Ill.) and cases cited. It appears to be well settled that the interest in the subject of the action which disqualifies must be a financial one, and must be *adverse* to the interest of the party objecting. Jones on Evidence, Civil Cases, § 775; Dickson v. McGraw, 151 Pa. St. 98, 24 Atl. 1043; Bowers v. Schuler, 54 Minn. 99, 55 N. W. 817. Regina Erickson had a direct pecuniary interest in the estate as legatee under the will. Whether that interest be great or small does not affect the operation of the statute. The precise test as to her competency in this case, is whether her interest is *adverse* to that of appellants. Clearly her interest was adverse to the direct pecuniary interest of the contestants of the will, because, if the will be set aside, she would be deprived of her legacy under it. Her interest in the estate was dependent upon the validity of the will, and was not adverse to the interests of appellants, who claim under and seek to sustain the same will. Appellants, therefore, could not object to her competency as a witness, on the ground that she had an interest in the estate *adverse* to them. Such an objection might have been interposed by the contestants, had she been called as a witness by appellants to sustain the will. Contestants' interests were adverse as to her, because they were seeking to set aside the will, and thereby deprive her of her pecuniary interest in the estate. By the express terms of the statute, contestants had a right to call her as a witness. We reach the conclusion, therefore, that the trial court did not err in receiving the testimony of these two witnesses.

[9]   The exclusion of certain evidence is assigned as error. Peter Erickson, called as a witness in behalf of appellants, was asked:

"Did you ever at any time attempt to influence or tell your mother in any way how to make a will, or to make this will?"

Robert Erickson, likewise called as a witness, was asked a similar question. The trial court sustained respondents' objections to the competency of these witnesses, under section 486,

supra. The incompetency of these two sons, who claimed under the will and who are appellants, to testify even negatively as to any transaction with their deceased mother affecting the will, is too clear to require discussion. Davis v. Davis, and other cases, supra.

[9-10] Appellants assign as error the admission of certain evidence, which need not be detailed here, as to statements of the testatrix expressing a testamentary purpose inconsistent with the terms of the will. Such evidence, though not competent to prove acts of undue influence, was competent and relevant, in connection with other evidence, as tending to show susceptibility to undue influence. In re Colbert's Estate, supra, note. It appears to be well settled that the burden of proof rests upon him who asserts undue influence. Matter of Martin, 98 N. Y. 197; Matter of Palmateer, 78 Hun, 48, 28 N. Y. Supp. 1062; Matter of Kindberg, 207 N. Y. 229, 100 N. E. 789; In re Falabella (Sur.) 139 N. Y. Supp. 1005.

[11, 12] It is, however, equally well settled that circumstances alone may sufficiently indicate undue influence. Matter of Van Ness, 78 Misc., Rep. 592, 139 N. Y. Supp. 485. The rule is also well settled that evidence which shows only that a party benefited by a will had the motive and opportunity to exert such influence is not sufficient to invalidate the will, where there is no evidence that he did exert such influence. Cudney v. Cudney, 68 N. Y. 148; Matter of Gihon, 44 App. Div. 621, 60 N. Y. Supp. 65; In re Campbell (Sur.) 136 N. Y. Supp. 1105. It cannot be doubted, however, that the exercise of undue influence in fact may be inferred from surrounding circumstances, taken in connection with statements made by the person alleged to have exercised such influence, and who is a beneficiary under the will. Fairbank v. Fairbank, 92 Kan. 45, 139 Pac. 1011. See Id. (Kan.) 141 Pac. 297; Grundmann v. Wilde, 255 Mo. 109, 164 S. W. 200; Naylor v. McRuer, 248 Mo. 423, 154 S. W. 772. In Hoffman v. Hoffman, 192 Mass. 416, 78 N. E. 492, the court said:

"There is no hard and fast rule. A person may be so situated, so weak and feeble, or so dependent on another, for instance, that mere talking to him or pressing a matter upon him would so affect him that, for the sake of quietness, he might do that which he did not want to do, and which, if his health had

been better, or his will stronger, he would not have done. Such a case would constitute * * * coercion as truly as force or duress."

See In re Herman's Will, 160 N. Y. Supp. 118. Ginter v. Ginter, 79 Kan. 721, 101 Pac. 634, 22 L. R. A. (N. S.) 1024, is instructive on this point.

[13] Various witnesses testified to acts and statements of Peter and Robert Erickson tending to show the character and extent of the influence they exercised over their mother, the testatrix. Mr. Warren, a witness for the contestants, testified that in April, 1911, in company with Annila Ekern, he visited Anna Erickson; that Mrs. Erickson said, "I want to get away from here; isn't there some way you can take me along?" that shortly after he heard loud talking, and went over to where Annila Ekern and Robert were standing, and heard the statement: "You come here to make trouble; that is all you come for. You get off; I don't want you here." Mrs. Ekern then said: "Mother wants to go with me. She wants to get away from here." In response to which either Peter or Robert said: "Mother shall stay here; she shall never be taken away from here; she shall die here," and then Peter Erickson said to Annila: "You come here to make trouble. I give you one minute to get off here." Another witness testified:

"I remember Robert Erickson coming down to my father's place shortly after his father died, and I heard him make the statement about the property there and what he was going to have done. He said he was going to try to get his mother to will all to him and Pete. That is what he said."

There is also evidence that Peter Erickson said his mother was getting old and childish and believed everything he told her; that she cried a good deal, and Peter would get angry, and tell her to go and lie down, to go to bed; that she never wanted to talk when the Ericksons were in the room. We shall not, however, refer further to, or attempt to detail, the evidence in the record, or to state all the facts and circumstances from which the inference of undue influence might be drawn.

We cannot agree with appellants' contention that the record contains no evidence competent or sufficient or tending to prove coercion or undue influence. An attempt to discuss the evidence

and to deduce by argument inferences or conclusions of fact therefrom would serve no useful purpose. The evidence is conflicting at the most vital points. The trial court had an opportunity to observe the demeanor of the witnesses and to determine the credibility of their testimony. We have considered the evidence with much care, and, while no direct act of coercion or undue influence is shown at the time of the execution of the will, we are satisfied there is sufficient evidence to sustain the inference of fact made by the trial court that undue and improper influence on the part of appellants was operative when the will was executed by testatrix, and that such finding is not against the preponderance of the evidence. Gingles v. Savings Bank, 33 S. D. 351, 146 N. W. 596. We have also considered the alleged errors in the admission of incompetent evidence. There is nothing in the record tending to show that such evidence was in the mind of the trial court when making findings of fact, nor is any of such evidence conclusive of the issue of undue influence. There was sufficient competent evidence, we think, to sustain the finding of the trial court, and reversible error is not shown. Kirby v. Citizens' Tel. Co., 20 S. D. 154, 105 N. W. 95; Bowdle v. Jencks, 18 S. D. 80, 99 N. W. 98; Starkweather v. Bell, 12 S. D. 146, 80 N. W. 183; Chapman v. Greene, 18 S. D. 506, 101 N. W. 351; Gingles v. Savings Bank, supra.

The order and judgment of the trial court are therefore affirmed.