## In Re OLSON'S ESTATE

LARSON, et al, Respondents, v. NELSON, et al, Appellants.

(234 N. W. 619.)

(File No. 7059. Opinion filed January 30, 1931.)

*H. Agor* and *Fletcher & Fletcher,* all of Aberdeen, for Appellants.

*Williamson, Smith & Williamson,* of Aberdeen, for Respondents.

BROWN, J. This case was before us on a former appeal, and the decision of this court reversing a judgment sustaining the will is reported in 54 S. D. 184, 223 N. W. 41. On retrial of the case the evidence was largely that given on the former trial; but some additional evidence was given and offered on the second trial. From a judgment on findings that Halleck Olson was at the time of the signing of the will mentally incompetent to make a will, and that at said time he did not have knowledge of the contents of the purported will, and from an order denying a new trial, the proponents appeal.

We deem it unnecessary to restate in detail the facts set forth in the opinion on the former appeal and at this time shall set out only so much of the testimony as may be necessary for the purposes of this decision. The attesting witnesses to the will, one of whom was a merchant in Aberdeen who had known Olson for about twenty years, during which period Olson had traded almost continually at his store, testified that Olson was of sound mind; that he took the will and envelope in which it was contained from his own pocket, laid it down on the desk in the clerk of court's office, found the place for his own signature without assistance and signed it in their presence, stated that it was his will, and asked them to sign it as witnesses, which they did in his presence and in the presence of each other. The will was not read over to him while the witnesses were present, but both testified that he was of sound mind, and the witness Krogh, a merchant who had known him and had done business with him for twenty years, testified that testator was in no way different when he signed the will than he had been during all the years of his acquaintance with him. Quite a number of other witnesses who had known testator for many years testified to the same effect, and while at the time of

signing the will the testator was forgetful and in some ways perculiar and eccentric, had the trial court found in favor of his competency to make a will we should not have felt at liberty to say that such finding was not sustained by the evidence.

Appellants earnestly contend that not only is the evidence insufficient to justify the finding that Olson was incompetent to make a will, but also is insufficient to sustain the finding that at the time of signing the will he did not have knowledge of its contents. At that time he was about seventy-eight years of age, and while he had come to this country when he was about thirty years of age, he seems to have associated principally with people of his own nationality and up to the time of his death knew very little of the English language. He could not read or write English, but did know enough of that language to enable him to transact simple business matters with people who knew no language but English. For a year or two prior to the signing of the will in controversy he seemed to have had a sort of mania about making a will and often set down on slips of paper the names of four or five persons and figures opposite those names supposed to indicate the amount of bequest he desired to make to them, the amounts ranging from $100 to $750. On some of these slips he had $150 for each of his nephews, Alfred Larson and Oscar Erickson, $750 for a grandson in Sweden named John Bockman, and $150 for Johan Jonson who was in Sweden. On one of these slips of paper which he had before Christmas, 1923, he had written $1,500 for Josephine Collin, who had kept house for him since his wife died in July, 1923, and $500 for Nels Nelson, one of the appellants. Until at least shortly before the signing of the will in controversy he seems to have had an aversion to disposing of all of his property; did not wish to dispose of anything but the specific legacies on these several slips of paper, because he feared that the devisees and legatees under his will might be able to take the property willed to them before his death and leave him without the means of support in his lifetime. He, however, persisted in the fixed idea of making a will, and on January 7, 1924, went to Aberdeen for that purpose, and along with another man who acted to some extent as an interpreter, he went to the office of Van Slyke & Agor in Aberdeen, and there the will in controversy was prepared by Mr. Van Slyke. Mr. Van Slyke did not know any of the Scandinavian language.

Olson spoke a dialect mixture of Swedish and Norwegian. From the little English that Olson could command Van Slyke says he was able to comprehend what Olson desired to go into the will, and with the exception of what was said in the will as to the "genealogy" of the grandson in Sweden, Van Slyke says he prepared the will entirely from the statements made to him in broken English by Olson. Van Slyke did not know the man who acted as occasional interpreter and he could not be found or produced as a witness. Van Slyke testified that he wrote down on a slip of paper a brief memo of the names and amounts that Olson told him he desired to have go in the will, that these names and amounts were Nils (John) Bockman $750, Johan Jonson $150, Oscar Erickson and Alfred Larson each $150, Josephine Collin $1,500, and the Lutheran Church $150, and "Nels E. Nelson and Peter E. Bunsness each one half Bal. Estate. Nels executor." That from this memo he prepared the will and when it was written up handed it to the interpreter and requested him to read it, that he held up the paper as if he was reading and talking, and that Van Slyke could hear the names of the beneficiaries named in the will and the amounts he read for each one, and that the amounts were read as they appear in the will, that Olson said he wanted Nels Nelson to sign as a witness, but Van Slyke told him that he had to have two witnesses and Nelson could not act as a witness because he was mentioned in the will, that Olson then said that he wanted O. A. Krogh as one of the witnesses, but he could not be got at that time, so Van Slyke told him that he could have the will signed any place and handed him the will, and he and the other man who acted as occasional interpreter left and Van Slyke never saw either of them again. Van Slyke further testified that Olson said that he did not want any of his other relatives except those named in the will to have any of his property. Van Slyke also testified that he got all the information he received in regard to preparing the will direct from Olson by talking with him in English, except the information about the "genealogy" of the boy in Sweden; this he obtained through the interpreter. After providing for the specific legacies already stated and providing for a suitable monument to be erected at the grave of himself and wife, the will devised and bequeathed to Peter Bunsness and Nels E. Nelson in equal shares all the balance of his property both real and personal,

and stated: "This bequest is made to the said Nels E. Nelson and Peter E. Bunsness aforesaid for the reason that for many years last past they have been true friends, beneficial and helpful to me in advising and assisting in matters of business and rendering friendly assistance in numerous matters." The will further provided that in the event Bockman, Johan Jonson, Oscar Erickson or Josephine Collin should die before the testator the sums bequeathed to any such one should belong to N. E. Nelson and Peter E. Bunsness, in equal shares, "in addition to the provisions made hereinbefore for their benefit." It contained the further provision: "I further, give, devise, and bequeath that, in event of the death of Nels E. Nelson prior to the death of the testator, then and in that event the share devised and bequeathed to him shall pass to his wife and children or such as may then be living, in the manner provided by the law of succession of this state, in the same manner as though he had died possessed of same," and a like provision, except that it did not contain the clause "in the manner provided by the law of succession of this state" in the event of the death of Peter E. Bunsness prior to the death of the testator.

██ There is no testimony or offer of testimony that these provisions were either communicated by the testator to Van Slyke in English or communicated to the testator by any one after the will was drawn. Van Slyke's memo introduced in evidence contained no notation as to these provisions. In the absence of such provisions, devises or legacies in favor of those who were not blood relations of the testator would lapse and become part of his estate not disposed of and would be subject to disposition under the law of succession of the state. 40 Cyc. 1515; Revised Code, § 637. Nelson at the time of the signing of the will was, and for many years prior thereto had been, clerk of courts, and Bunsness had also for some years been such clerk and deputy clerk. The evidence does not disclose any intimate friendship between Nelson and the testator, nor that he at any time rendered him any assistance except in advising him as to the amount of his taxes when he would come to the county seat to pay them, and occasionally talking over with him the amount of rent due from the tenant on his farm. Bunsness came more in contact with Olson than Nelson did. When Bunsness was a small boy he lived on a farm adjoining that of Olson's and was frequently at Olson's farm and often stayed the

greater portion of a day, and as he grew up he frequently exchanged work with Olson. In 1902 Bunsness was elected clerk of courts of Brown County and thereafter did not see so much of Olson, but when Olson did come to Aberdeen he would call at Bunsness' office and visit with him. Bunsness testified that he assisted Olson in business affairs, but the only enumeration of such assistance was that he would figure up his storage tickets when he had wheat, and on one occasion figured the cost of making a grade near the river, and would go over the figures on lumber and paint bills with him at times.

In view of the fact that up to within a very short time prior to the signing of this will Olson was averse to disposing of the residue of his estate remaining after the specific legacies he desired to provide for, and that there is no testimony that the will in its entirety was read to him in any language that he understood, we are unable to say that the finding that at the time of signing the will Olson did not have knowledge of its contents is not supported by the evidence.

Appellants offered to prove by the testimony of N. E. Nelson that shortly before the will was signed, and on the same day, Olson came to his office and stated to him that the will had been read to him already but he wished to have Nelson read it again; that thereupon Nelson did read the will in its entirety and explained to him all the details covered by the will. This was objected to as being a transaction and conversation with the deceased to which Nelson was not competent to testify under the provisions of section 2717 of the Revised Code; the objection was sustained and the offered testimony excluded. Nelson being a party to the proceeding and a devisee under the will, his testimony on this subject was inadmissible. Starkweather v. Bell, 12 S. D. 146, 80 N. W. 183; Ekern v. Erickson, 37 S. D. 300, 157 N. W. 1062; In re Barrett's Estate, 48 S. D. 302, 204 N. W. 167. Edith Nelson and Louise Colahan, who were clerks in Nels Nelson's office and neither of whom understood anything of the Scandinavian language, testified that just prior to the signing of the will Olson handed it to Nelson, and thereupon Nelson appeared to read it, and that now and then he would stop what appeared to be reading and engage in conversation with Olson; that during this appearance of reading and conversation with Olson they heard the names of Peter Buns-

ness and N. E. Nelson and Bockman mentioned, but neither of them understood anything that was said or read, except that they heard those three names mentioned. We are unable to say that the finding of the court that at the time of the signing of the will Olson did not have knowledge of its contents is not supported by the evidence, nor that it is against the preponderance of the evidence.

Appellants assign error on the sustaining of a large number of questions asked by them of various witnesses. Many of the questions objected to were obviously relevant and proper and should have been allowed, but while the objections were erroneously sustained, we think in every instance all that could have been elicited by the most favorable answers to such questions was eventually admitted and testified to by the witnesses whose testimony was objected to, so that the ruling of the court on those questions, while erroneous, was not prejudicial.

The judgment and order appealed from are affirmed.

MISER, C., sitting in lieu of CAMPBELL, J., disqualified.

ROBERTS, J., not participating.

POLLEY, P. J., and BURCH and MISER, JJ., concur.