In the Matter of the ESTATE of Wallace A. NELSON, Deceased.

Spencer NELSON, Plaintiff and Appellant,

and

National Bank of South Dakota, as Guardian of Fern Nelson, a/k/a Fern E. Nelson, Plaintiff and Appellant,

v.

FIRST NORTHWESTERN TRUST CO. OF SOUTH DAKOTA, a South Dakota Corporation, Executor of the Estate of Wallace A. Nelson, Deceased, and John M. Theodosen, Defendants and Respondents.

Nos. 12254, 12263.

Supreme Court of South Dakota.

Argued March 13, 1978.

Decided Dec. 29, 1978.

David V. Vrooman, Sioux Falls, for plaintiff and appellant Spencer Nelson.

Gary J. Pashby of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for plaintiff and appellant National Bank of South Dakota; Claude A. Hamilton, Sioux Falls, on the brief.

Ellsworth E. Evans and Edwin E. Evans of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and respondents.

ZASTROW, Justice.

Upon the petition of John Theodosen, two documents, executed by Wallace A. Nelson (decedent) were admitted to probate as decedent's last will. The contestants of the will, Spencer Nelson, decedent's brother, Lyle Nelson, decedent's nephew, and the National Bank of South Dakota as guardian of Fern Nelson, decedent's sister, appeal from the order which reformed the documents and admitted them to probate. We reverse.

Wallace Nelson lived and farmed near Valley Springs, South Dakota. During his lifetime the decedent acquired a sizeable estate, but, a bachelor, was survived only by his brother, sister and nephews.

On January 24, 1956, decedent executed a "Last Will and Testament" drafted by Garretson attorney, John Theodosen. The terms of the will provided that the decedent's entire estate was granted "to my friend John Theodosen, his heirs, executors, or administrators, in fee."[1] Attached to the will was a document entitled "Personal Instructions to John Theodosen, Trustee of the Last Will and Testament of Wallace A. Nelson."[2] The personal instructions directed that Theodosen was to organize a charitable corporation and "to turn my said property as you, in your discretion deem best, over unto such corporation." The instructions stipulated that the corporation would be administered "in accord with the personal instructions I have previously given to you, * * *."

This will was the last of three wills drafted by Theodosen for decedent. A will executed by decedent on December 31, 1955, had granted his entire estate to Theodosen without any personal instructions as to any further disposition of the estate. A prior will executed on October 22, 1953, had devised decedent's entire estate to Theodosen "in trust" for the benefit of Fern Nelson and the Tri-State Memorial Hospital of Valley Springs. Theodosen was given the "absolute power of alienation over the trust corpus and income if the original beneficiaries died or ceased to exist." Attached to that will was a set of "Instructions" directing the disposition of the trust income and property.

Four months previously, on June 15, 1953, decedent had executed the last of four wills drafted for him by Ernest Raley, an attorney from Sioux Falls. That will had established a life estate in decedent's real property for Fern Nelson with the remainder to Tri-State Memorial Hospital. The residuary estate was given in equal shares to Fern Nelson and Lyle Nelson.

When the petition for probate was challenged, Theodosen withdrew as attorney for the estate and his request to be appointed as executor of the will. The trial court appointed the First Northwestern Trust Company as "Executor with Will Annexed" and named several prominent citizens to establish the "Wallace A. Nelson Charitable Corporation" to receive the estate property.

The contestants raise three issues in this appeal:

(1) Did the trial court err in determining that the will and personal instructions were a single will consisting of two separate documents;

(2) Did the trial court err in finding that the decedent was not unduly influenced by John Theodosen; and

(3) Did the trial court err in reforming the will to name the "Wallace A. Nelson Charitable Corporation" as the beneficiary of the estate?

## INTEGRATION

■ The doctrine of integration in the law of wills, normally involves two situations. The first involves the integration in *one* testamentary document of several sheets of paper, either by a physical or mechanical attachment or by a coherence of thought or interrelation of parts. 79 Am. Jur.2d Wills § 190–191; 94 C.J.S. Wills § 162; 95 C.J.S. Wills § 313a. The second situation is the integration of two or more documents separately executed that are of a testamentary character. 79 Am.Jur.2d Wills § 194, 824–825; 94 C.J.S. Wills § 131; 95 C.J.S. Wills § 313b. It is the second situation with which we are confronted in this appeal.

■ SDCL 29–5–4 adopts the doctrine of integration involved in the second situation that: "Several testamentary instruments executed by the same testator, are to be taken and construed together as one instrument." The doctrine applies to documents

1. See Appendix A.

2. See Appendix B.

executed at different times, as well as those executed at the same time. Testamentary documents executed at different times will be admitted to probate as one will so far as they are not totally inconsistent and there is no revocation of the earlier will, expressly or by implication. *Wheat v. Wheat*, 236 Ala. 52, 181 So. 243 (1938). However, if totally inconsistent documents are executed at the same time, both must be held void because of uncertainty. *Collar v. Mills*, 190 Okl. 481, 125 P.2d 197 (1942); *Ashley v. Usher*, 384 S.W.2d 696 (Tex.1964).

■ Integration of separate testamentary documents is to be distinguished from incorporation by reference. In the former, all of the instruments must be of testamentary nature and satisfy the statutory requirements of execution. *In re Noyes' Estate*, 40 Mont. 231, 106 P. 355 (1909); *In re Lewis' Estate*, 91 Cal.App.2d 322, 204 P.2d 898 (1949). In the latter, a properly executed will may incorporate by reference documents that are not of a testamentary character or even executed by the testator. *In re Protheroe's Estate*, 77 S.D. 72, 85 N.W.2d 505 (1957); 79 Am.Jur.2d § 199–209; 94 C.J.S. Wills § 163. Neither party here argues that the "Personal Instructions" were incorporated in the "Last Will and Testament" by reference.

Contestants assert that the "Personal Instructions" should not have been admitted to probate because they are not of a testamentary nature, were not properly executed as a will, and are wholly inconsistent with the "Last Will and Testament."

■ The proponents of the will rely heavily upon *Matter of Estate of Nelson*, S.D., 250 N.W.2d 286 (1977), to support their position that the "Personal Instructions" were of testamentary nature. In *Matter of Estate of Nelson*, supra, this court reiterated the requirement that there be both the testamentary intent of the decedent as well as the testamentary character of the instrument. To meet the requirement of testamentary intent, the decedent must have intended the document to be a revocable disposition of property effective upon his death and that intent must be

apparent from the writing and from the surrounding circumstances. 250 N.W.2d at 288. The testamentary character is satisfied if the document makes a disposition of property after death or appoints an executor. *In re Vasgaard's Estate*, 62 S.D. 421, 253 N.W. 453 (1934). It is not necessary that technical words be used to make a disposition of property. SDCL 29–5–13; *Matter of Estate of Nelson*, supra; 1 Page on Wills (Bowe-Parker Rev.) § 6.21; 94 C.J.S. Wills § 131; 79 Am.Jur.2d Wills § 26.

■ However, an instrument which is merely precatory, i. e., it advises or recommends a disposition but leaves the actual disposition of the property within the discretion of another, is not testamentary in character.

The test is whether or not testator intends, by his language, to control the disposition of his property * * * or * * * is he simply indicating what he regards as a wise disposition, or is he merely giving advice, leaving to some other person, frequently the person to whom the property is given * * * full discretion to ignore such advice and to make a different disposition of the property. 1 Page on Wills (Bowe-Parker Rev.) § 5.19. *See also* 95 C.J.S. Wills § 602.

■ It appears from the circumstances surrounding the execution of both documents that decedent intended these documents to constitute his will. However, testamentary intent alone is not sufficient to a document if it lacks testamentary character by failure to dispose of property or appoint an executor. *See Poole v. Starke* (Tex.Civ. App.) 324 S.W.2d 234 (1959). The language of the "personal instructions" that Theodosen "turn over my said property as you, in your discretion deem best, over unto such charitable corporation" and "having full faith in your integrity and my trust in your ability to carry out my special desires" are precatory, in that the ultimate discretion in disposition of the property is given to Theodosen. However, the reference in the title of the document to Theodosen as the "trus-

tee" of decedent's last will and the language that "it is my decision and last wish and desire that my property be disposed of as set forth herein," are argued to be an indication of an intention to make a disposition.

Whether words in a will are to be construed as mandatory or as merely precatory is not always solely determinable by the nature of the words themselves, but the court will look to the expressed intention of the testator, as found from the context of the will, *taking into consideration the surrounding circumstances, including the testator's relationship to the beneficiaries* and the nature of the estate devised. (Emphasis added.) 95 C.J.S. Wills § 602.

The circumstances surrounding the execution give no indication that the words used in the "Personal Instructions" were dispositive rather than merely an expression of decedent's intent to leave the disposition in Theodosen's discretion. The only testimony about decedent's dispositive intent came from Dr. Suchow:

Well, I'm not going to be able to say word for word, but in essence I remember the scene, he was rather a heavy-set man and he had coveralls and he had the tendency of getting his _ _ _ I remember this * * * _ _ _ getting his thumbs up here where they attached, you know, the buckle(.) I remembered what was present here, I said to Wallace, (")[I]s this your intent(?") I said "[I]t appears that you're placing an awful lot of responsibility * * * in Mr. Theodosen(?") and he answered just in the affirmative. This is the conversation I had with him because as it looked to me he was, as I could see and reading it, doesn't take long to read, I was just _ _ _ had to satisfy in my mind that this is what he wanted to do and so I merely asked him, (")This places an awful lot of responsibility and depends a great deal upon John's judgment,(") and those _ _ it was in that line of questioning that I spoke to him and he just _ _ _ he sat back there, I remember this, just tipping or to that effect, and it was a very

short relative to it. He made it matter of fact that he accepted that and that's the best of my recollection. I don't remember further words.

■ A thorough review of the transcript reveals no other surrounding circumstances which bear upon decedent's intent to make a disposition of property by the personal instructions. Because the "Personal Instructions" made no disposition of decedent's property and appointed no executor, it was not a testamentary instrument and should not have been admitted to probate under SDCL 29-5-4.

### UNDUE INFLUENCE

■ Influence, to be undue, must be such as to destroy the free agency of the testator and substitute the will of the person exercising it for that of the testator. *In re Armstrong's Estate*, 65 S.D. 233, 272 N.W. 799 (1937). Its essential elements are (1) susceptibility of the testator to undue influence; (2) opportunity for the exercise of undue influence; (3) disposition to exert undue influence; and (4) a result in the will showing the effect of such undue influence. *In re Rowland's Estate*, 70 S.D. 419, 18 N.W.2d 290 (1945).

■ Where a confidential relationship exists between a testator and a beneficiary, the beneficiary actively participates in the preparation and execution of the will, and the beneficiary unduly profits in the will, a presumption of undue influence arises. *In re Metz Estate*, 78 S.D. 212, 100 N.W.2d 393 (1960). The establishment of facts giving rise to the presumption also establishes a prima facie case which can sustain a finding of undue influence. *In re Rowland's Estate*, supra; *In re Blake's Estate*, 81 S.D. 391, 136 N.W.2d 242 (1965); *In re Daly's Estate*, 59 S.D. 403, 240 N.W. 342 (1932); *In re Keeley's Estate*, 167 Minn. 120, 208 N.W. 535 (1926); *Tidholm v. Tidholm*, 391 Ill. 19, 62 N.E.2d 473 (1945). The presumption of undue influence remains even though the beneficiary introduces evidence rebutting the presumption. *In re Spenner's Estate*, 17 Wis.2d 645, 117 N.W.2d 641 (1962); *State*

*v. Horan*, 21 Wis.2d 66, 123 N.W.2d 488 (1963).

■ The proponents argue that the presumption of undue influence does not exist in the present case. We do not agree. Theodosen and Nelson were not social friends. Their only relationship was that of attorney-client. That relationship is a confidential relationship. *In re Daly's Estate*, supra. Theodosen admits that he drafted the January 24, 1956 will and was present when it was executed. This will devises and bequeaths all of Nelson's property "to my friend, John M. Theodosen, his heirs, executors, or administrators, in fee . . ." and leaves "nothing to any of my relatives." The personal instructions give Theodosen the discretion to turn over the property he has in fee to a charitable corporation. These facts give rise to a presumption of undue influence and, in this case, sustain a finding of undue influence.

The proponents argue, however, that the presumption was conclusively rebutted at trial. They claim that two of the essential elements of undue influence, susceptibility and opportunity, are lacking. Again we disagree.

Although Nelson was mentally astute until his death, Theodosen, by virtue of his legal training and confidential relationship, held the dominant position. He allowed Nelson to give him absolute power of alienation in the first will. In 1955 after office hours on New Year's Eve, Theodosen drafted another will giving himself all the property in fee. Finally, in 1956, Nelson gave Theodosen all of his property in fee with personal instructions involving broad discretion. The bequest in fee was made because of Theodosen's representation that there must be a "vesting in fee" to make the disposition effective. Theodosen encouraged complete confidence in his legal advice by never refusing to write himself into the will and never insisting that Nelson seek independent legal advice if he (Nelson), in fact, did want to make such a disposition.[3]

■ Added to this is the fact that pre-Theodosen wills provided for Nelson's sister, brother, and nephew. Within four years of Nelson's first dealing with Theodosen they were totally disinherited. While these relatives are not considered the natural objects of the testator's bounty, *In re Estate of Fleege*, S.D., 230 N.W.2d 230 (1975), their gradual disinheritance by Nelson in wills drafted by Theodosen demands close judicial scrutiny. *Johnson v. Shaver*, 41 S.D. 585, 172 N.W. 676 (1919). The pattern of the wills indicates an inability by Nelson to resist Theodosen's influence. See *Ekern v. Erickson*, 37 S.D. 300, 157 N.W. 1062 (1916).

There are additional facts pointing to undue influence by Theodosen. Theodosen was the attorney for Nelson's sister Fern when each will was drafted and while Fern was disinherited. Theodosen was named executor in all the Nelson wills; a practice that was apparently standard in Theodosen wills for many other decedents. Theodosen was present at the execution of all the wills, and was alone in his office with Nelson before the witnesses arrived to execute the final will. The will remained in Theodosen's safe and was under his control until admitted to probate.

While the presence of any of these facts standing alone may not have been enough to establish undue influence, taken together they clearly create a presumption of undue

3. We find the circumstances here clearly distinguishable from those in *Estate of Hamm*, 1978, S.D., 262 N.W.2d 201.

There the will named the attorney to receive the estate property as the trustee to distribute funds to only *nonprofit*, charitable and public facilities for elderly persons. The charitable trust would be supervised by the court under SDCL Ch. 21-22 and Ch. 55-9. The provisions of that will precluded the attorney from ever receiving the benefits of the trust corpus or interest, except statutory trustee fees. There the relatives contesting the will had never been included in prior wills and were of a much more distant kinship.

Here the bequest is in fee to the attorney upon his representation that the law required it, which decedent readily accepted. The funding of the "charitable corporation" was entirely in the discretion of the attorney and the "charitable corporation" was chosen, according to Theodosen, to avoid the court supervision of a charitable trust.

influence. The evidence presented was insufficient to rebut the presumption. No evidence was presented indicating that Theodosen took no unfair advantage of his dominant position. A prima facie case of undue influence was established and it required a finding of undue influence. We therefore reverse the trial court.

██ Since the only bequest in the will was to John Theodosen and that bequest is void because of undue influence, the general scheme of distribution is tainted. The entire will is void and must be denied probate, thereby rendering the reformation of the will error. *In re Estate of Lloyd*, 85 S.D. 657, 189 N.W.2d 515 (1971); 1 Page on Wills § 15.1.

The judgment is reversed.

WOLLMAN, C. J., and DUNN and MORGAN, JJ., concur.

PORTER, J., deeming himself disqualified, did not participate in the opinion.

Appendix A

LAST WILL AND TESTAMENT

OF

WALLACE A. NELSON

KNOW ALL MEN BY THESE PRESENTS, that I, Wallace A. Nelson, of Valley Springs, Minnehaha County, South Dakota, being of sound and disposing mind and memory, and of lawful age, do hereby make, publish and declare this instrument as and for my Last Will and Testament, hereby revoking any and all wills and codicils by me heretofore made.

I.

It is my will that all my ordinary debts, together with expenses of last sickness and funeral expenses, be fully paid directly after my death. This provision is not to be construed as requiring the payment of any mortgage indebtedness or payment of any installment before said payments are due and payable.

II.

I give, devise and bequeath all of my property, whether the same be real or personal, wheresoever situated, or over which I might have testamentary control, to my friend, John M. Theodosen, his heirs, executors, or administrators, in fee.

III.

I leave absolutely nothing to any of my relatives under this, my Last Will and Testament.

IV.

Lastly, I make, constitute and appoint John M. Theodosen, to serve as Executor of this, my Last Will and Testament, and to serve without bond. In the event that John M. Theodosen should be unable to act or not desire to act as such Executor, under this, my Last Will and Testament, then I give unto John M. Theodosen the power to appoint a trust company then in existence (sic) to serve in his capacity and stead as Executor of this, my Last Will and Testament.

IN TESTIMONY WHEREOF, I have hereunto signed my name this <u>24</u> day of <u>January,</u> 1956.

<u>*Wallace A. Nelson*</u>

This instrument, consisting of two (2) pages, of which this is the last, was on the date thereof, signed, published and declared by the said testator, Wallace A. Nelson, to be his last Will and Testament, in our presence, who, at his request, have subscribed our names hereto as witnesses, in his presence and in the presence of each other.

<u>*Earl E. Suchow M.D.*</u> residing at <u>*Garretson, So. Dak.*</u>

<u>*Orville J. Rekstad*</u> residing at <u>*Garretson, So. Dak.*</u>

APPENDIX B

PERSONAL INSTRUCTIONS TO JOHN M. THEODOSEN, TRUSTEE OF THE LAST WILL AND TESTAMENT OF WALLACE A. NELSON:

You, John M. Theodosen, are hereby ordered and directed to incorporate and organize, after my death, a charitable corporation and to turn my said property as you, in your discretion deem best, over unto such

charitable corporation. The charitable corporation is to be administered by you with the view in mind to accomplish the purposes I have previously discussed with you and in accord with the personal instructions I have previously given to you, at all times remembering that the underlying principle of the charitable corporation should be patterned after that of the "Minneapolis Foundation".

It is my particular wish and desire that the charitable corporation will direct its efforts towards helping perpetuate good American Citizenship among the youth of America, aid to the aged and aid to crippled children. This is not to be construed as limiting the power of the corporation to help worthwhile charities.

I understand fully that, in the event you should predecease me, the attached Will is void as it pertains to this charitable corporation and such an event will necessitate making other arrangements; but in the event you should die after my death, but before such a charitable corporation can be organized, your heirs, executors or administrators are empowered and directed to carry out my wishes in accord with these instructions.

You and I have discussed this unusual disposition of my property and probable tax consequences (sic) but I have given it careful consideration and thought and, having full faith in your integrity and my trust in your ability to carry out my special desires, it is my decision and last wish and desire that my property be disposed of as set forth herein.

Dated *January 24* 1956

*Wallace A. Nelson*

This instrument, consisting of two (2) pages, of which this is the last, was on the date thereof, signed, published and declared by the said testator, Wallace A. Nelson, to be his personal instructions to John M. Theodosen, Trustee of the Last Will and Testament of Wallace A. Nelson, in our presence, who, at his request, have subscribed our names hereto as witnesses, in his presence and in the presence of each other.

*Earl E. Suchow M.D.* residing at *Garretson, So. Dak.*

*Orville J. Rekstad* residing at *Garretson, So. Dak.*

I, John M. Theodosen, having read the foregoing personal instructions, and being fully cognizant of Wallace A. Nelson's purposes, desires and wishes, hereby accept the responsibilities delegated to me and bind myself to perform the same.

*John M. Theodosen*