**In the Matter of the DISCIPLINE OF John M. THEODOSEN, as an Attorney at Law.**

**No. 13028.**

Supreme Court of South Dakota.

Argued Nov. 19, 1980.

Decided March 11, 1981.

R. James Zieser, Tyndall, for the Disciplinary Board, South Dakota State Bar Association, for complainant.

Ellsworth E. Evans, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for respondent.

FOSHEIM, Justice.

These proceedings were instituted by a complaint alleging that respondent attorney John M. Theodosen of Garretson, South Dakota, violated SDCL 16–19–33(5), which provides that the willful violation of any bylaw, rule, or regulation duly adopted by the South Dakota State Bar Association and approved by the Supreme Court shall constitute misconduct and be grounds for discipline. The pertinent rules were adopted by the Bar Association and approved by the Supreme Court as SDCL 16–18 Appx. Canon 5, EC 5–5, and EC 5–6.

EC 5–5 reads:

A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or over-reached the client. If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that his client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client.

EC 5–6 states:

A lawyer should not consciously influence a client to name him as executor, trustee, or lawyer in an instrument. In those cases where a client wishes to name his lawyer as such, care should be taken by the lawyer to avoid even the appearance of impropriety.

Pursuant to SDCL 16–19–29, the Disciplinary Board of the State Bar Association (Board) investigated the allegations and found that respondent was in violation of SDCL 16–18 Appx. Canon 5, EC 5–5, and EC 5–6, in that he drafted over twenty wills wherein he was named as the executor, co-executor or trustee and that, based upon the number of times it occurred, he consciously influenced his clients to name him in such capacities.

The basic charge contained in the complaint springs from the facts set forth in *Estate of Nelson*, 274 N.W.2d 584 (S.D. 1978). The Board specifically found that respondent did unduly influence Wallace A. Nelson under such circumstances as not to avoid the appearance of impropriety. The Board recommended that a formal petition be filed with this Court concerning the allegations that respondent violated the Code of Professional Responsibility.

The matter was thereupon referred by this Court to the Honorable Leslie R. Hersrud, a Circuit Judge, to take testimony and submit findings and recommendations pursuant to SDCL 16–19–68. The referee found that respondent is a lawyer of some thirty years of practice with no previous complaints. The referee further found that only three of the objectionable wills were executed after the 1970 Code of Professional Conduct took effect. The referee found "that in each of the cases where the attorney was executor or co-executor it was as a result of a more than casual attorney-client relationship and at the request of the testator." There was no finding by the referee that the post-1970 wills prepared by respondent established that respondent consciously influenced those clients to name him executor or, alternatively, that respondent's conduct took on the appearance of impropriety once he learned that those clients wished to name him as executor.

The referee found that there was no intent on respondent's part to violate Canon 5, EC 5–6. The referee, however, did expressly find that respondent's drafting of the Nelson will was contrary to Canon 5, EC 5–5, but that it was executed prior to the adoption of the 1970 Code of Professional Responsibility and the allegations contained in the complaint were not specifically addressed or prohibited by the rules of ethical conduct then existing. The referee reported that there was no showing that respondent collected fees or charges as both an executor and attorney[1] and, in the absence of such a showing, recommended a personal reprimand.[2]

While the findings of the referee are not conclusive when presented to this court, they are nevertheless entitled to our careful consideration, since we are mindful that the referee saw and heard the witnesses with all the advantage that is gained from such personal contact. *In Re Goodrich*, 78 S.D. 8, 98 N.W.2d 125 (1959); *In Re Schmidt*, 70 S.D. 161, 16 N.W.2d 41 (1944). If such findings are supported by the evidence, they will not be disturbed by the Supreme Court. *In Re Jaquith*, 79 S.D. 677, 117 N.W.2d 97 (1962); *In re Aaberg*, 66 S.D. 613, 287 N.W. 506 (1939).

We accordingly adopt the findings of the referee with respect to Canon 5, EC 5–5 and restrict our consideration to Canon 5, EC 5–6 and to the referee's recommendation. The facts set forth in *Estate of Nelson*, supra, which the referee found to be a violation of Canon 5, EC 5–5, are incorporated by reference and show that on January 24, 1956, decedent executed a "last will and testament," the third drafted for Wallace Nelson by respondent. Under the terms of that will, the decedent's entire estate was granted "to my friend John Theodosen, his heirs, executors, or administrators, in fee." Attached to the will was a document entitled "Personal Instructions to John Theodosen, Trustee of the Last Will and Testament of Wallace A. Nelson." The instructions directed respondent to organize a charitable corporation and "to turn my said property as you, in your discretion deem best, over unto such charitable corporation." The instructions further stipulated that the corporation would be administrated "in accord with the personal instructions I have previously given to you."

In *Estate of Nelson*, supra, we found that the facts gave rise to a presumption, and sustained a finding of, undue influence. We also noted that the pre-Theodosen Wills of Wallace Nelson provided for his sister, brother and nephew and that within four years of Nelson's first dealing with respondent, those persons were totally disinherited. We stated that such a pattern demands close judicial scrutiny and indicates an inability by Nelson to resist respondent's influence. *See also Ekern v. Erickson*, 37 S.D. 300, 157 N.W. 1062 (1916). We concluded that the only bequest in the will, which was to respondent, was null and void because of undue influence.

As the referee found, all of the Nelson wills drafted by respondent were executed prior to the adoption of the South Dakota Code of Professional Responsibility, which was approved by the South Dakota Supreme Court on July 21, 1970. However, the Nelson will was petitioned for probate by respondent in 1976, subsequent to the adoption of Canon 5, EC 5–6. As we noted in *Estate of Nelson*, supra, the bequest was in fee to respondent upon his representation that the law required it. The funding of the "charitable corporation" was entirely within the discretion of the attorney, and the "charitable corporation" was chosen, according to respondent, to avoid court supervision. While respondent, in the petition for probate of the Nelson will, disavowed any personal pecuniary claim as an heir,

---

1. Any such double compensation would likely be inconsistent with his capacity as an executor and impermissible under SDCL 30–25–6. See *In re Balbach's Estate*, 56 S.D. 196, 227 N.W. 886 (1929).

2. SDCL 16–19–35, "Misconduct shall be grounds for:

   . . . .

   (4) Public censure by the Supreme Court; or
   (5) Private reprimand by the disciplinary board.

devisee, or legatee of the estate, he was nonetheless perfectly willing to have the court appoint him as executor of the will, serve as attorney for the estate and receive the estate assets in the capacity directed by the will—all that willingness concerning a will the execution of which he had infected with such undue influence as to render it null and void and which the referee found was drafted contrary to Canon 5, EC 5–5. He withdrew his request to be appointed as executor of the tainted will and as attorney for the estate only when his petition for probate of the will was challenged. Such conduct gives rise, at the very least, to an appearance of impropriety under Canon 5, EC 5–6.

Our decision that the conduct of respondent in connection with the Wallace A. Nelson will was an exercise in undue influence was published. We now conclude that the discipline in this matter should consist of a public censure by this court pursuant to SDCL 16–19–35(4), as urged by the Disciplinary Board.

DUNN, MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., dissents.

WOLLMAN, Chief Justice (dissenting).

The formal accusation filed by the Disciplinary Board charged that respondent had violated Canon 5, EC 5–5 and EC 5–6 of the South Dakota Code of Professional Responsibility by naming himself as sole heir and executor in the will of Wallace A. Nelson. That will, however, was executed in 1956; the Code of Professional Responsibility was adopted in July of 1970.* Although the petition for probate of the Nelson will was filed in August of 1976, that petition specifically disavowed any personal pecuniary claim by respondent as an heir, devisee, or legatee of the estate. Accordingly, I would hold that any impropriety by respondent in drafting the 1956 Nelson will was adequately dealt with by our decision in *Matter of Estate of Nelson*, 274 N.W.2d 584 (S.D. 1978).

With respect to the other wills in which respondent was named as executor, co-executor, alternate executor, or trustee, the referee found that the record did not disclose that respondent had consciously influenced the testators to name him in those capacities. I accept this finding.

The considerations expressed in Canon 5, EC 5–6 should be clear enough for all to appreciate. The measure of care to be taken by a lawyer to avoid even the appearance of impropriety when acceding to a request to be named as executor, trustee, or attorney may well require the preparation of documentation beyond the usual recital in the instrument itself. Although a client may have the right to ask his or her attorney to serve in a fiduciary capacity, the attorney should not undertake to accept the designation without making a record that will clearly dispel any later suggestion that the motivation for such designation was anything other than the client's free, informed, uninfluenced decision.

I would dismiss the proceedings.

---

* Since the formal accusation does not allege that respondent had violated any of the pre-1970

Canons of Professional Ethics, we need not speculate on that point.