#26204-a-DG

**2012 S.D. 70**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

In the Matter of the Estate of
JAMES W. KESLING, Deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SCOTT P. MYREN
Judge

* * * *

JOHN R. VON WALD of
Von Wald Law Offices
Selby, South Dakota                     Attorneys for appellant
                                        Sandra L. Kesling.


ONNA B. HOUCK of
Cutler & Donahoe LLP
Sioux Falls, South Dakota               Attorneys for appellee,
                                        Estate.

* * * *

CONSIDERED ON BRIEFS
ON MAY 21, 2012

OPINION FILED **10/17/12**

GILBERTSON, Chief Justice.

[¶1.] James W. Kesling executed a holographic will. After James died, the will was admitted into probate and James's three daughters were appointed as co-personal representatives of James's estate. Both the Estate and James's wife, Sandra, petitioned the circuit court to construe the will. The Estate moved for summary judgment and the circuit court granted the motion. Sandra appeals, arguing that the will is ambiguous, and thus, the court erred by not considering extrinsic evidence as to James's intent.

## FACTS

[¶2.] James Kesling executed a holographic will on April 2, 2008, and passed away on July 4, 2008. He was survived by his wife, Sandra, and three daughters from a previous marriage, Kandi Smith, Staci Stern, and Jami Mendoza. Sandra and James had been married for twenty-nine years and did not have any children together.

[¶3.] The holographic will read as follows:

> April 2, 2008
> 10:00 A.M.
>
> Last Will and Testament of James W. Kesling Dated this 2nd
> Day of April 2008
>
> I James W. Kesling do hereby will all my personal property and
> personal belongings to Sandra L. Kesling of Mobridge who is my
> wife. This includes my land in Dewey, Corson and Walworth
> Counties. I also will my Contract For Deed with Faron
> Schweitzer, Coffy Enright and Richard Enright. It is my wish
> that my Estate be Administrated ~~my~~ By my daughters and and
> [sic] upon Sandra L. Kesling [sic] death the Estate shall be
> divided Equally between my 3 daughters (over) I James W.

> Kesling being of Sound Mind and body do Hereby Sign this Document.

James signed the document and Sandra notarized it. After James died, the will was admitted into probate and James's three daughters were appointed as co-personal representatives of James's estate.

[¶4.] The daughters and Sandra did not agree on the meaning of James's will. The daughters believed that James intended to give Sandra a life estate in his real and personal property with a remainder to the three daughters. Sandra believed that James intended to leave all property with Sandra outright with the "wish" that Sandra would then pass her property to James's daughters when Sandra passed away, or that if Sandra predeceased James, the daughters would inherit James's property upon his death. Both the Estate and Sandra petitioned the court to construe the will.

[¶5.] The Estate moved for summary judgment. After a hearing, the circuit court granted the motion, holding that the will unambiguously demonstrates James's intent to devise his real and personal property to Sandra for life with the three daughters as remaindermen. Sandra appeals.

## STANDARD OF REVIEW

[¶6.] "We review the interpretation of a will under the de novo standard of review, with no deference given to the circuit court's interpretation." *In re Estate of Seefeldt*, 2006 S.D. 74, ¶ 7, 720 N.W.2d 647, 649.

## ANALYSIS

[¶7.] "The primary goal in interpreting a will is to determine the testator's intent." *Id.* ¶ 8. "In determining testamentary intent, all words and provisions appearing in a will must be given effect as far as possible, and none should be cast aside as meaningless." *Id.* "If the intent is clear from the language used, that intent controls." *Id.* "If doubt exists as to the testator's intent, the language used and the circumstances surrounding the execution of the writing will again be examined in light of pertinent rules of construction." *Id.*

[¶8.] Testamentary "[l]anguage is ambiguous when it is reasonably capable of being understood in more than one sense." *In re Estate of Klauzer*, 2000 S.D. 7, ¶ 10, 604 N.W.2d 474, 477. "An ambiguity is not of itself created simply because the parties differ as to the interpretation of the will." *Id.* "Extrinsic evidence is admissible to clarify any ambiguity." *Id.*

[¶9.] Here, the parties' dispute revolves around the fourth sentence of James's will, which reads: "It is my wish that my Estate be Administrated ~~my~~ By my daughters and and [sic] upon Sandra L. Kesling [sic] death the Estate shall be divided Equally between my 3 daughters[.]" The Estate argues that this language is unambiguous and demonstrates James's intent to give Sandra a life estate in his property with his three daughters as remaindermen. Sandra responds that the fourth sentence is ambiguous because it is reasonably capable of being understood in at least three ways: (1) devising all property to Sandra with the "wish" that she then pass it on to the daughters upon her death; (2) devising all property to Sandra unless Sandra predeceases James, and in that case, devising all property to the

three daughters; and (3) the Estate's interpretation. Thus, Sandra argues, the circuit court erred by not considering extrinsic evidence to determine James's intent. Sandra emphasizes James's use of the noun "wish" at the beginning of the fourth sentence. We find Sandra's arguments unpersuasive.

[¶10.]     Sandra's first interpretation of the fourth sentence (that it devises all property to Sandra with the "wish" that she then pass it on to the daughters upon her death) ignores the plain language of the will. James wrote that his estate, not Sandra's estate, shall be divided among his daughters. James capitalized "estate" which shows that James is referring back to his estate as referenced in the beginning of the sentence. In addition, James used the verb "shall" which demonstrates the mandatory nature of this instruction.

[¶11.]     As part of this first interpretation, Sandra emphasizes James's use of the noun "wish" at the beginning of the sentence, arguing that "wish" equates to a mere suggestion that carries through the entire sentence through the conjunction "and." Sandra also argues that "wish" makes the will ambiguous. We reject these arguments. The language in the fourth sentence is not ambiguous – James's wished that his three daughters would administrate his estate and James mandated that upon Sandra's death, his estate be divided among his three daughters. There is no need to carry the noun "wish" over because James uses the verb "shall" after the conjunction, leaving two independent clauses. Furthermore, the will as a whole demonstrates James's intent to include his daughters from a previous marriage in his estate. The will's language does not show any intent by James to possibly disinherit his three daughters by devising all of his property to Sandra outright

with the mere hope that she would then pass her estate on to the daughters, especially considering the fact that James named the daughters as personal representatives of his estate. Therefore, we conclude that Sandra's first interpretation of James's will is unreasonable.

[¶12.]      Sandra's second interpretation of the fourth sentence is that it devises all property to Sandra unless Sandra predeceases James, and in that case, it devises all property to the three daughters. However, in reading James's will as a whole, we reject this interpretation. None of the language James used in the will addresses the issue of Sandra predeceasing him. Instead, the will only addresses issues arising after James's death. Moreover, in the first part of the fourth sentence, James discusses who will administrate his estate. It is not reasonable to interpret the second half of the fourth sentence as addressing Sandra predeceasing James when the first half of the same sentence covers the administration of James's estate, an event independent of Sandra's death. Instead, James's unambiguous language demonstrates that the fourth sentence concentrates on situations arising after James's death. Therefore, we also find this interpretation of James's will unreasonable.

[¶13.]      The only reasonable interpretation of James's will is that James intended to give Sandra a life estate in his real and personal property with James's three daughters as remaindermen. James used unambiguous language that is not reasonably capable of being understood in more than one sense. Extrinsic evidence is only admissible to clarify an ambiguity, and thus, is not needed in this case. "We

determine that [James's] intent is clearly expressed within the four corners of the document." *See Klauzer*, 2000 S.D. 7, ¶ 14, 604 N.W.2d at 478.

## CONCLUSION

[¶14.]     We conclude that James's intent is clearly expressed within the four corners of his holographic will and extrinsic evidence is not needed. We are bound by the unambiguous language of the will, which demonstrates James's intent to give Sandra a life estate in his property with his three daughters as remaindermen.

[¶15.]     Affirmed.

[¶16.]     KONENKAMP and ZINTER, Justices, concur.

[¶17.]     SEVERSON and WILBUR, Justices, dissent.


SEVERSON, Justice (dissenting).

[¶18.]     I respectfully dissent. "Our goal 'in interpreting a will is to discern the testator's intent.'" *Novak v. Novak*, 2007 S.D. 108, ¶ 12, 741 N.W.2d 222, 226 (quoting *In re Estate of Klauzer*, 2000 S.D. 7, ¶ 9, 604 N.W.2d 474, 477). "If intent is clear from the language used, that intent controls." *In re Estate of Roehr*, 2001 S.D. 85, ¶ 9, 631 N.W.2d 600, 603 (quoting *Estate of Klauzer*, 2000 S.D. 7, ¶ 9, 604 N.W.2d at 477) (internal quotation marks omitted). However, "[i]f doubt exists as to the testator's intent, 'the language used and the circumstances surrounding the execution of the writing will . . . be examined in light of pertinent rules of construction.'" *In re Estate of Seefeldt*, 2006 S.D. 74, ¶ 8, 720 N.W.2d 647, 649 (quoting *In re Estate of Brownlee*, 2002 S.D. 142, ¶ 16, 654 N.W.2d 206, 210). In this case, the majority opinion concludes that we need not consider extrinsic

evidence because "[t]he only reasonable interpretation of James's will is that James intended to give Sandra a life estate in his real and personal property with James's three daughters as remaindermen." Majority Opinion, *supra* ¶ 13. I disagree.

[¶19.]    James's will states, "I James W. Kesling do hereby *will* all my personal property and personal Belongings to Sandra L. Kesling of Mobridge who is my wife. This Includes my Land in Dewey, Corson and Walworth Counties. I Also *will* my Contract For Deed with Faron Schweitzer, Coffy Enright, and Richard Enright." (Emphasis added.) By using the term "will," James clearly directed his property to pass to his wife. However, the language James used in the following sentence of his will was less definite: "It is my *wish* That my Estate be Administrated ~~my~~ By my daughters and and [sic] upon Sandra L. Kesling['s] death the Estate shall be divided Equally between my 3 daughters . . . ." (Emphasis added.) If this sentence is read in conjunction with the remaining provisions of the will, it is unclear whether James intended "to control the disposition of his property," or whether he was "simply indicating what he regard[ed] as a wise disposition." *In re Estate of Nelson*, 274 N.W.2d 584, 587 (S.D. 1978) (citation omitted).

[¶20.]    We have recognized, "It is not necessary that technical words be used to make a disposition of property." *Estate of Nelson*, 274 N.W.2d at 587. But we have noted that "an instrument which is merely precatory, i.e., it advises or recommends a disposition but leaves the actual disposition of the property within the discretion of another, is not testamentary in character." *Id.* "Whether words in a will are to be construed as mandatory or as merely precatory is not always solely determinable by the nature of the words themselves . . . ." *Id.* at 588 (citation

-7-

omitted). The meaning of such words "must be determined from the manner in which such words are used in connection with other phraseology of the will." *In re Walsh's Estate*, 59 S.D. 277, 239 N.W. 240, 241 (1931) (citation omitted). *See Estate of Nelson*, 274 N.W.2d at 588 (noting that, to determine the meaning of a will, this Court "will look to the expressed intention of the testator, as found from the context of the will").

[¶21.]    After reading James's will in its entirety, one could reasonably conclude, as the majority opinion does, that James intended to grant his wife a life estate in his real and personal property, with James's three daughters as remaindermen. But one could also reasonably conclude that James intended to grant his wife a fee simple interest in his property. Although James expressed a "wish" that his estate would be divided equally between his three daughters upon his wife's death, one could reasonably conclude that James intended this to be a recommendation to his wife regarding the future disposition of his property, not a binding command.

[¶22.]    In determining whether testamentary language is ambiguous, we have stated: "Language is ambiguous when it is reasonably capable of being understood in more than one sense." *In re Estate of Jetter,* 1997 S.D. 125, ¶ 20, 570 N.W.2d 26, 30-31 (quoting *In re Estate of Olson,* 332 N.W.2d 711, 713 (S.D. 1983)). "Where a will is ambiguous on its face, . . . extrinsic evidence is admissible to establish the intent of the testator." *Id.* ¶ 27 (citing *In re Estate of Nelson*, 250 N.W.2d 286, 288 (S.D. 1977); *In re Estate of King,* 278 N.W.2d 171, 173 (S.D. 1979)). Here, James's will is reasonably capable of being interpreted in more than one sense. The circuit

court thus erred in refusing to consider extrinsic evidence of the testator's intent.

For this reason, I respectfully dissent.

[¶23.]     WILBUR, Justice, joins this dissent.