#27793-r-SLZ

**2016 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ESTATE OF BONNIE JEAN HUBERT,
also known as Bonnie Jean Pease, Deceased.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE SCOTT P. MYREN
Judge

\* \* \* \*

WILLIAM D. GERDES
JERALD M. MCNEARY, JR. of
William D. Gerdes, P.C.
Aberdeen, South Dakota                    Attorneys for appellants
                                          Lynn and Lisa Schock.


JACK H. HIEB
ZACHARY W. PETERSON of
Richardson, Wyly, Wise,
 Sauck & Hieb, LLP
Aberdeen, South Dakota                    Attorneys for appellee
                                          Donna Mae Sedivy.

\* \* \* \*

                                          CONSIDERED ON BRIEFS
                                          ON OCTOBER 3, 2016

                                          OPINION FILED **10/26/16**

#27793

ZINTER, Justice

[¶1.]     Bonnie Jean Pease[1] died leaving a holographic will.  The circuit court ruled that the will devised all residual property to Douglas Hubert and nothing to Lisa and Lynn Schock.  The court ruled that Pease only intended Schocks to be personal representatives who were to execute the will.  Schocks appeal.  We reverse.

*Facts and Procedural History*

[¶2.]     Pease executed a holographic will while in the penitentiary approximately seven months before her death on August 4, 2013.  The will disinherited Pease's mother Donna Sedivy, her sister Beverly Shimmin, and her brother Brian Hubert, but not her brother Douglas Hubert.  The will explained the disinheritances as well as her other wishes.  With respect to her wishes, Pease indicated that Douglas had "some right to acquire some of [her] wealth," that she owed her friends Lisa and Lynn Schock "for their amazing precious support," that she needed to provide care for her bird "Cocky," and that she wanted to provide funding for a lawsuit against the State and the South Dakota Women's Prison.  Following this explanatory language, Pease wrote gifting language that provided:

> Hence, I give all my belongings to Lisa and Lynn Schock contingent on them giving a share to my brother Douglas Dean Hubert and for Cocky's new keeper mom search, and making some arrangements for litigation start monies to correct injustices at SDWP in Pierre.

The foregoing language was followed by a break and a new paragraph concerning "executors."  It provided:

---

1.     Also known as Bonnie Jean Hubert.

> Specifically I name Lisa & Lynn Schock the Executors of my estate. I have already transferred many things to them prior to my death. This is for what remains and I [sic]
> Dated this 10th day of January 2013.

[¶3.]    The circuit court admitted the will to probate and held an evidentiary hearing to determine whether the will could be executed and if so, how to execute it. Following the hearing, the court interpreted the will to mean that Pease did not intend to devise anything to Schocks. The court ruled that Pease only intended to appoint them as personal representatives who were to set aside funds to search for a new home for Cocky and fund litigation against the State; and after that, Schocks were to distribute the entire residual estate to Douglas.[2]

[¶4.]    Schocks appeal. They argue that the gifting language of the will gives them a conditional gift.

## Decision

[¶5.]    We review the interpretation of a will de novo, with no deference to the circuit court's interpretation. *In re Estate of Kesling*, 2012 S.D. 70, ¶ 6, 822 N.W.2d 709, 710. "The primary goal in interpreting a will is to determine the testator's intent." *Id.* ¶ 7, 822 N.W.2d at 710-11. "In determining testamentary intent, all words and provisions appearing in a will must be given effect as far as possible, and none should be cast aside as meaningless." *Id.* ¶ 7, 822 N.W.2d at 711. "If the intent is clear from the language used, that intent controls." *Id.* "Our inquiry is limited to what the testator meant by what [she] said, not what we think the

---

2.    The Schocks volunteered to care for the bird. Therefore, the court ruled that the Schocks would only have to submit a plan for the litigation and provide a proposal for what Douglas would receive from the estate.

testator meant to say." *In re Estate of Klauzer*, 2000 S.D. 7, ¶ 9, 604 N.W.2d 474, 477.

[¶6.] The only dispute is whether the will makes a gift to Schocks or whether it only appoints them personal representatives.[3] The circuit court ruled that the language of the will reflected Pease's intent to give Schocks her "belongings" only as "executors" to distribute them according to the "specific requests." In the court's view, the gifting language, "Hence, I give all my belongings to Lisa and Lynn Schock contingent on" three specific requests—when read together with the explanatory language—"indicate[d] no desire to give the Schocks anything." The court found that Pease only intended to: provide funding to search for a new home for Cocky; provide "litigation start monies" against the prison; and provide Douglas with the remainder of the estate. The court believed that because Pease had three specific goals[4] but made no specific devise to Schocks, they were not entitled to receive anything. The court also believed that Pease had already transferred everything she wanted Schocks to receive before her death and that the statement in the executor language, "This is for what remains," reflected Pease's intent that Schocks were to distribute her remaining belongings only as personal representatives and not devisees.

---

3.  There were other concerns about execution of other provisions that were addressed in the proceedings below. None of those issues have been raised on appeal.

4.  The court did not believe that the sentence in the explanatory language, "I owe Lisa & Lynn Schock for their amazing precious support of me and Cocky from 2010 to and through the end of my life," was one of the will's specific goals.

[¶7.]        We disagree with the circuit court's interpretation.  Immediately after explaining the reasons for her wishes, Pease wrote a gifting clause with language unambiguously making a testamentary gift to Schocks: "Hence, I give all my belongings to Lisa and Lynn Schock . . . ."  Pease did condition this gift on three requirements: "giving a share to . . . Douglas Dean Hubert and for Cocky's new keeper mom search, and making some arrangements for litigation start monies to correct injustices at SDWP in Pierre."  But this conditional gifting language is not precatory—it does not leave "the actual disposition of the property within the discretion of another."  *See Nelson v. First Nw. Tr. Co.* (*In re Estate of Nelson*), 274 N.W.2d 584, 587 (S.D. 1978).  Further, the gifting language is followed by the blank line and new paragraph appointing Schocks as "executors."  This separation of language and subject matter indicates that the language in the "executors" paragraph was neither gifting language nor a limitation on the gifting language in the preceding paragraph.  *Cf. Estate of Kesling*, 2012 S.D. 70, ¶ 11, 822 N.W.2d at 711 (stating the word "wish" at the beginning of a sentence to indicate who would be administrator of the estate did not carry over into the second part of the sentence, which used the word "shall" in reference to disposition of the estate, because the sentence contained two independent clauses separated by a conjunction).

[¶8.]        The gifting language in Pease's will is not ambiguous.  The will does not say "I give all my belongings to my brother Douglas Hubert."  Nor does it say "I give all my belongings to Lisa and Lynn Schock to distribute to my brother Douglas Hubert."  It unequivocally "give[s] all" of Pease's "belongings" to Schocks "contingent on" them "giving a share" to Douglas, providing for "Cocky's new keeper

mom search, and making some arrangements for litigation start monies." Because "[o]ur inquiry is limited to what the testator meant by what [she] said, not what we think the testator meant to say," *Estate of Klauzer*, 2000 S.D. 7, ¶ 9, 604 N.W.2d at 477, we conclude that the will gives Pease's property to Schocks subject to the stated conditions.

[¶9.] Reversed and remanded.

[¶10.] GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.