#29843-a-SRJ
**2022 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

ESTATE OF BONNIE JEAN HUBERT a/k/a
BONNIE JEAN PEASE, Deceased.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE GREGORY C. MAGERA
Judge

\* \* \* \*

BRIAN L. UTZMAN of
Smoot & Utzman, P.C.
Rapid City, South Dakota                    Attorneys for appellant Douglas
                                            D. Hubert.


WILLIAM D. GERDES of
Gerdes & McNeary, P.C.
Aberdeen, South Dakota                      Attorneys for appellees Lynn
                                            Schock and Lisa Schock.

\* \* \* \*

CONSIDERED ON BRIEFS
AUGUST 30, 2022
OPINION FILED **12/07/22**

#29843

JENSEN, Chief Justice

[¶1.]     Bonnie J. Pease, also known as Bonnie J. Hubert, died leaving a handwritten holographic will (Will).  This Court held in *Estate of Hubert*, 2016 S.D. 74, 887 N.W.2d 80 (*Hubert I*) that the Will appointed Lynn and Lisa Schock (Schocks) as the personal representatives and gave them Bonnie's entire estate, subject to three conditions.  On remand, the circuit court declared that the Schocks satisfied the conditions of the Will and approved the Schocks' final proposed distribution of Bonnie's estate (Estate).[1]  Bonnie's brother, Douglas Hubert, appeals, arguing that the circuit court erred in finding that the Schocks had fulfilled one of the conditions of the Will.  We affirm.

## Facts and Procedural History

[¶2.]     Bonnie died from health conditions while incarcerated at the South Dakota Women's Penitentiary (SDWP) on August 4, 2013.  She executed the Will approximately seven months before her death.  The Will disinherited all of Bonnie's family members except for Douglas.  The gifting clause of the Will provided:

> Hence, I give all my belongings to Lisa and Lynn Schock contingent on them giving a share to my brother Douglas Dean Hubert and for Cocky's new keeper mom search, and making some arrangements for litigation start monies to correct injustices at SDWP in Pierre.

It is the final phrase of the gifting clause, "making some arrangements for litigation start monies to correct injustices at SDWP in Pierre" (Litigation Condition), that is at issue in this appeal.

---

1.     The Estate consisted of 80 acres of land valued at approximately $140,000, a bank account, several vehicles, and Bonnie's pet bird, Cocky.

[¶3.]        With respect to the Litigation Condition, the Will further explained that "I also feel a need to help prevent the [egregious] wrongs done by the State of South Dakota, et. al.  I hope to provide some recoverable monies to the ACLU of South Dakota to help with that endeavor and/or to provide funding so my estate/my brother Douglas Dean Hubert can recover what he would have obtained but for my wrongful death and the many other wrongful acts of SD State et. al."[2]

[¶4.]        The Schocks were long-time friends of Bonnie.  Bonnie lived with the Schocks when she did not have a home.  Additionally, while Bonnie was incarcerated, the Schocks handled Bonnie's financial matters and cared for her bird, Cocky.  The Schocks continued to care for Cocky after Bonnie's death.

[¶5.]        In the proceedings leading up to the appeal in *Hubert I*, the circuit court determined that the Will did not give the Schocks anything, and instead only appointed the Schocks as co-personal representatives.  The circuit court found that the Will directed the Schocks to provide monies for Cocky's care and to fund litigation against the State, and once they completed those two conditions, they were required to distribute the entire residual Estate to Douglas.

[¶6.]        The Schocks appealed the circuit court's order, and this Court reversed and remanded the case back to the circuit court.  *Hubert I*, 2016 S.D. 74, ¶ 1, 887 N.W.2d at 81.  We held in *Hubert I* that the gifting language of the Will was unambiguous and "unequivocally 'give[s] all' of [Bonnie's] 'belongings' to Schocks

---

2.      In 2015, Lisa testified that Bonnie believed that the State provided her with poor medical treatment during her incarceration.  Lisa indicated there was no evidence that Bonnie's death was a result of any medical maltreatment or wrongful conduct by the State and that Bonnie did not further substantiate the basis for her alleged claim against the SDWP.

'contingent on' them 'giving a share' to Douglas, providing for 'Cocky's new keeper mom search, and making some arrangements for litigation start monies.'" *Id.* ¶ 8, 887 N.W.2d at 83.

[¶7.] At the initial hearing on remand, the parties agreed that the Schocks could dispose of the personal property and pay the expenses of administration of the Estate. The Schocks also informed the court that they had cared for Cocky since Bonnie's death and intended to continue doing so.

[¶8.] However, the parties were not in agreement concerning the amount of the bequest to Douglas or the Litigation Condition. The Schocks proposed that Douglas should receive one fourth of the Estate, while Douglas asserted that he should receive at least half of the Estate. Douglas argued that the Litigation Condition was not capable of execution because Bonnie did not indicate the nature of the cause of action and the statute of limitations for any alleged claim had already expired. He objected to the Estate spending any money to pursue litigation against the State because he believed that it would be a waste of the Estate's assets and did not "think that [was] worthwhile to spend [E]state resources on."[3] The Schocks, however, suggested that the American Civil Liberties Union (ACLU) should be contacted about the funding of potential litigation described in the Will.

[¶9.] The court authorized the Schocks "to inquire further to see whether the ACLU is willing to pursue [a lawsuit,] . . . and make reasonable efforts to accomplish the goals of Ms. Pease." The court explained that the Schocks were not to pursue futile causes of actions, but rather, if the ACLU determined that there

---

3. Douglas hired different counsel after this hearing.

were no viable causes of action, the Estate should not waste any resources on pursuing litigation. The court further instructed that if the Schocks believed that Bonnie intended "to pursue a more broad recompense . . . for the conditions at [SDWP]" and they wanted to pursue litigation beyond contacting the ACLU, they must present a reasonable plan for doing so.

[¶10.] In January 2019, Douglas filed a proposed distribution that provided for the entire Estate to be distributed to him. The Schocks objected, and the court held a hearing to address Douglas's proposed distribution. Douglas argued that the entire Estate should be distributed to him because the Schocks failed to take any steps to fulfill the Litigation Condition imposed by the Will. However, Douglas did not suggest another plan to fulfill the Litigation Condition. The court denied Douglas's proposed distribution and directed the Schocks to present a plan to fulfill the Litigation Condition within two months.

[¶11.] The Schocks filed a notice of proposed action and distribution of assets on June 16, 2020. The Schocks proposed selling the real property, paying Douglas one-fourth of the Estate or $50,000, whichever was less, and paying the remaining balance to the Schocks. The Schocks further proposed paying nothing to the ACLU "because the entity [did] not intend to pursue legal action[.]" They also agreed to continue to care for Cocky. Douglas objected, arguing that the Schocks failed to propose a plan for litigation against the SDWP as required by the Will and that the Schocks failed to give him his share of the Estate, which he asserted was the remaining balance of the Estate. Douglas also requested that the court remove the

Schocks as co-personal representatives for failing to timely satisfy the conditions of the Will since a 2016 circuit court order that predated *Hubert I*.

[¶12.] At the hearing on the Schocks' proposed distribution, the Schocks claimed that they had contacted the ACLU to inquire about litigation against the SDWP and informed the ACLU that they had potential funding for such litigation. The Schocks represented that the ACLU explained it had no pending litigation against the SDWP and did not anticipate commencing such litigation. Based upon Douglas's demand for documentation of the ACLU's decision, the court ordered the Schocks to obtain an affidavit from the ACLU verifying that the Schocks had informed the ACLU of the Will's Litigation Condition, the availability of startup money, and the value of the Estate. The circuit court also directed Douglas to propose an alternative plan for litigation if he believed that there was a cause of action against the SDWP that should be pursued by the Schocks.

[¶13.] Following the hearing, the Schocks submitted an affidavit from the Executive Director of the ACLU for North Dakota, South Dakota, and Wyoming. The director confirmed in the affidavit that she was contacted by the Schocks about the Litigation Condition in the Will and that the Schocks informed her that the net worth of the Estate was approximately $225,000. The director explained that the ACLU did not presently have any pending litigation against the SDWP and based on the expense of litigation against prisons and the limited likelihood of success, the ACLU did not, at the present time, intend to pursue any litigation against the SDWP. Douglas did not respond to the ACLU affidavit.

[¶14.] The court subsequently entered an order providing that Douglas could purchase the real property at its appraised value less $50,000. Alternatively, the court permitted the Schocks to sell the real property at auction; pay remaining liens, debts and fees; pay Douglas the lesser of one-fourth of the Estate or $50,000; and pay the remaining balance of the Estate to the Schocks. The order also provided that no monies would be distributed to the ACLU, and directed the Schocks to continue to care for Cocky.[4]

[¶15.] On October 7, 2021, the Schocks filed a petition to close the Estate. The Schocks stated that they had sold the real property at auction, they had paid all claims and expenses of administration of the Estate, the Estate exceeded $200,000 after the payment of those expenses, and they therefore distributed $50,000 to Douglas. The petition stated that the balance of the net proceeds would be distributed to the Schocks. Douglas objected and argued that the Schocks failed to satisfy the Litigation Condition and any gift to them had lapsed.

[¶16.] Following a hearing, the court entered findings of fact and conclusions of law and an order finding the Schocks had fulfilled all three conditions of the Will, directed the Schocks to distribute the Will according to the circuit court's 2020 order approving the Schocks' proposed distribution, and granted the petition to close the Estate. The court found that the Schocks had made reasonable efforts to satisfy the Litigation Condition and further noted that Douglas had failed to offer an alternative plan to satisfy the Litigation Condition.

---

4. Douglas attempted to appeal this order, but this Court dismissed the appeal for failing to timely serve notice of the appeal on all required parties under SDCL 15-26A-4(3).

[¶17.] Douglas appeals, arguing that the circuit court erred in finding that the Schocks fulfilled the Litigation Condition.

## Analysis

[¶18.] "We review a circuit court's interpretation of a will de novo." *In re Bickel*, 2016 S.D. 28, ¶ 28, 879 N.W.2d 741, 750. This Court's "goal 'in interpreting a will is to discern the testator's intent. If the intent is clear from the language used, that intent controls.'" *Novak v. Novak*, 2007 S.D. 108, ¶ 12, 741 N.W.2d 222, 226 (citation omitted). "We limit our examination to what the testator meant by what he said, not what we think he meant to say." *Bickel*, 2016 S.D. 28, ¶ 28, 879 N.W.2d at 750. "In determining testamentary intent, all words and provisions appearing in a will must be given effect as far as possible, and none should be cast aside as meaningless." *In re Estate of Kesling*, 2012 S.D. 70, ¶ 7, 822 N.W.2d 709, 711 (citation omitted). Regarding the circuit court's finding that the Litigation Condition was fulfilled, "[a] circuit court's findings of fact will be upheld 'unless they are clearly erroneous.'" *Estate of Fox*, 2019 S.D. 16, ¶ 12, 925 N.W.2d 467, 471 (quoting *In re Estate of Flaws*, 2016 S.D. 60, ¶ 19, 885 N.W.2d 336, 342–43).

[¶19.] While neither party claims that the Litigation Condition is per se ambiguous, in their arguments as to whether the condition has been satisfied, they disagree concerning its breadth. Douglas argues that the circuit court erred by determining that the Litigation Condition was satisfied because the Schocks contacted the ACLU and provided an affidavit from the ACLU stating that it did not intend to pursue litigation against the SDWP. He asserts that the Schocks should have contacted other lawyers or public interest groups and used Estate

funds to solicit efforts to commence litigation against the SDWP as expressed in Bonnie's Will. The Schocks respond that they fulfilled the Litigation Condition because they complied with the language of the Will and the circuit court's directions to explore potential litigation with the ACLU. The Schocks argue that there was no potentially meritorious action to be taken against the SDWP and the ACLU's decision not to proceed with litigation against the SDWP was effectively a disclaimer of the bequest under SDCL 29A-2-801.[5]

[¶20.] We established in *Hubert I* that the gifting clause contains mandatory language conditioning the gift to the Schocks as follows: "I give all my belongings to Lisa and Lynn Schock *contingent* on them . . . making some arrangements for litigation start monies to correct injustices at SDWP in Pierre." *See Hubert I*, 2016 S.D. 74, ¶¶ 2, 8, 887 N.W.2d at 81, 83 (emphasis added) (holding that the Will unambiguously gives Bonnie's property to the Schocks subject to the stated conditions). However, *Hubert I* did not interpret the specific language of the Litigation Condition. This language conditioning the gift to the Schocks on making "some arrangements for litigation start monies to correct injustices at SDWP" does not specify the alleged wrongs that Bonnie believed the Schocks should pursue or the amount of money to be used toward this endeavor. The phrase "some

---

5. SDCL 29A-2-801 provides that "[a]ny person who may be entitled to receive any property or beneficial interest . . . under any will . . . shall have the right to disclaim irrevocably the whole or any part of such property or beneficial interest." *See also* 38 Am. Jur. 2d Gifts § 28 (2022) ("[A] gift ordinarily can be completed only if it is accepted by the donee; the law forces no one to accept a gift."). Bonnie expressed some intention to use Estate funds to encourage the ACLU to pursue litigation against the SDWP, but the Litigation Condition in the gifting clause did not actually gift any monies to the ACLU. Therefore, there was no gift for the ACLU to disclaim under the Will.

arrangements" and the lack of specificity in the gifting clause demonstrate that the Will provided the Schocks with discretion to determine how to use funds for pursuing litigation against the SDWP. *See In re Estate of Seefeldt,* 2006 S.D. 74, ¶ 17, 720 N.W.2d 647, 653 ("It is also significant that . . . the word 'suggest' provided [the personal representative] with discretion in choosing the appraisers.").

[¶21.] Bonnie's intention to provide the Schocks with discretion in deciding how to apply the Litigation Condition is further demonstrated by precatory language in the Will, which stated "I also feel a need to help prevent the [egregious] wrongs done by the State of South Dakota, et. al. I hope to provide some recoverable monies to the ACLU of South Dakota to help with that endeavor and/or to provide funding so my estate/my brother Douglas Dean Hubert can recover what he would have obtained but for my wrongful death and the many other wrongful acts of SD State et. al."

[¶22.] Precatory language in a will "advises or recommends a disposition but leaves the actual disposition of the property within the discretion of another [and] is not testamentary in character." *Matter of Nelson's Estate*, 274 N.W.2d 584, 587 (S.D. 1978). When language is merely precatory, "[w]ords in a will . . . may be used in resolving doubts in other parts of the will; but they do not amount to a testamentary disposition, and do not control or alter express dispositions in the will, unless it is apparent that it was the testator's intention that such words of desire or intention should be mandatory." *In re Wynea's Estate*, 40 S.D. 416, 167 N.W. 394, 395 (1918) (citation omitted). The language "I . . . feel a need" and "I hope to provide some monies to the ACLU to help with that endeavor" is precatory and

#29843

lacks any mandatory directive in terms of a specific action the Schocks were required to take in fulfilling the Litigation Condition.

[¶23.]     Douglas's proposed reading of the Litigation Condition imposes duties on the Schocks that are not present within the four corners of the Will. He argues that the Schocks should have expended more resources or made further efforts to pursue litigation against the SDWP. In response, the circuit court provided Douglas an opportunity to present a plan to fulfill the Litigation Condition. Douglas did not at any time present an alternative plan. More importantly, there is no evidence, or even a suggestion, that the Estate had a potentially meritorious claim against the SDWP. The Schocks' actions under these circumstances were sufficient to carry out the intentions expressed by Bonnie in the Litigation Condition. The circuit court did not err in finding that the Schocks satisfied the Litigation Condition of the Will with their efforts.

[¶24.]     We affirm.

[¶25.]     KERN, SALTER, and DEVANEY, Justices, and KLINGER, Circuit Court Judge, concur.

[¶26.]     KLINGER, Circuit Court Judge, sitting for MYREN, Justice, who deemed himself disqualified and did not participate.

-10-